STATE OF NORTH CAROLINA v. MARVIN CARSON

No. 8526SC987

(Filed 20 May 1986)

1. **Criminal Law § 66.4— lineups which never took place—evidence improperly admitted—defendant not prejudiced**

   In a prosecution of plaintiff for robbery with a dangerous weapon, testimony by two victims and the investigating officer as to scheduled lineups which never took place was irrelevant and inadmissible, but because the State never offered evidence that defendant was identified at a lineup, there was no reasonable possibility that this error contributed to the verdict.

2. **Criminal Law § 34.5— evidence of other offense—admissibility to show identity of defendant**

   In a prosecution for robbery with a dangerous weapon, testimony about defendant's arrest on an unrelated charge was properly admitted for the limited purpose of explaining the robbery victim's initial identification of defendant from a television broadcast.

3. **Criminal Law § 66; Robbery § 5— instructions on single eyewitness identification—instructions substantially like request**

   In a prosecution for robbery with a dangerous weapon where conviction was based upon a single eyewitness identification, the trial court's instruction on identification testimony was sufficiently similar in substance to the one requested by defendant; defendant failed to sustain the burden of proving that his requested instruction was correct in law, supported by the evidence, and that a different result would likely have been reached had the instruction been given; and the court was not required to instruct that "a conviction based solely on one eyewitness identification represents the greatest single threat to the achievement of our ideal that no innocent person shall be punished."

APPEAL by defendant from *Beaty, Judge.* Judgment entered 14 March 1985 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 5 February 1986.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Shirley Fulton, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Gordon Widenhouse, for defendant appellant.*

BECTON, Judge.

From a judgment imposing a twenty-five-year sentence for robbery with a dangerous weapon, defendant Marvin Carson appeals. We find no prejudicial error.

## I

Pamela Hill and Larry Pierce were working at the International House of Pancakes (IHOP) in Charlotte, North Carolina, on 4 November 1984. After closing the restaurant, Ms. Hill unlocked the door so that Mr. Pierce could go to a nearby hotel for change. When Mr. Pierce came back into the IHOP, two men followed him. The taller of the two men, later identified as the defendant, pointed a shotgun at Ms. Hill, and the shorter man demanded the orange bag containing the money from the cash register. When Ms. Hill informed them that it was in the safe, the shorter man rummaged through the cash register.

Mr. Pierce peered out from the kitchen and heard Ms. Hill say they were being robbed. One of the robbers ordered Mr. Pierce to come out front, but he refused and went upstairs to hide in the air conditioning room. Apparently believing that Mr. Pierce had gone to call the police, the taller man urged the shorter man to leave. The shorter man continued looking for the money, then grabbed Ms. Hill's purse, took the wallet, turned and ran out after the taller man.

Ms. Hill testified that she observed both men at a distance of approximately three feet for at least six to eight minutes. She also testified that the area in which the robbery occurred was well lit and that she remembered what the men were wearing. She described the taller man as 6'2" to 6'7" with big, soft eyes and the shorter man as 5'1" to 5'2" with a "little pumpkin head," "squared off chin" and "crazy eyes." Ms. Hill testified that she later recognized the taller man in a television news broadcast on 9 November 1984. Unbeknownst to Ms. Hill, defendant was being arrested on an unrelated charge. She had picked the shorter man out of a photographic array a few days before. She did not notify the police department that she had recognized the taller man on the news broadcast until 29 November 1984 when she went to the police station to give a written statement. She first made a corporeal identification of the defendant at his probable cause hearing, when he was the only black man seated at the defendant's table.

Defendant offered evidence of an alibi. Dawn Franklin testified that she and defendant traveled to Morganton, North Carolina on 3 November 1984 and did not return to Charlotte until 5

November 1984. This was corroborated by the testimony of Belinda Bass, who said that the defendant and Dawn Franklin had stayed with her at her house in Morganton. The defendant also introduced Ms. Franklin's work records, which revealed that she was off that weekend.

The defendant has brought forward eleven exceptions, contained in three assignments of error. The thrust of the defendant's argument is that the State's identification evidence was extremely weak and that the State failed in its attempt to bolster its case with certain pre-trial line-up evidence because that evidence was never linked to the defendant. Consequently, defendant argues that the trial court erred in admitting in evidence for substantive purposes, testimony that the eyewitness recognized defendant on a television broadcast being arrested for an unrelated offense, and further erred by failing to instruct the jury on the perils of a single eyewitness identification.

Defendant, whose defense was alibi, asserts that the State would not have met its substantial burden of proving identity if not for the erroneous admission of the tainted testimony and the omission of a proper jury instruction.

II

[1]  We agree that the testimony by the two IHOP employees and the investigating officer as to scheduled line-ups which never took place was irrelevant and inadmissible; however, the admission of this irrelevant evidence did not so infect the total evidentiary picture as to require a reversal. Indeed, defendant failed to object to two of the several attempts by the State to show that no line-up occurred. Consequently, under *State v. Hammonds*, 307 N.C. 662, 666, 300 S.E. 2d 361, 363 (1983), we could also find that defendant waived his right to challenge this evidence. Because the State never offered evidence that defendant was identified at a line-up, we are convinced that there is no reasonable possibility that this error contributed to the verdict. *See State v. Knox*, 78 N.C. App. 493, 496, 337 S.E. 2d 154, 157 (1985).

III

[2]  Defendant also assigns as error the trial court's failure to suppress references to the circumstances surrounding the defendant's apprehension and arrest on an unrelated charge. Defendant

correctly states the general rule that evidence of mere accusations of wrongdoing, without a resulting criminal conviction, is not admissible either as substantive or impeaching evidence. *State v. Williams*, 279 N.C. 663, 185 S.E. 2d 174 (1971); *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954). This rule is an application of the principle that the evidence must be confined to the point in issue in the case on trial. *Id.*

The trial court made an effort to limit the testimony about defendant's arrest on another charge to that necessary to elicit evidence about Ms. Hill's identification of him from the television broadcast. Officer Alsbrook was allowed to testify that the arrest broadcast on television, from which Ms. Hill made her identification, was in no way related to the present case.

We do not agree with the defendant's contention that the only purpose of this testimony was to prejudice the jurors against the defendant and to encourage them to convict the defendant because he had been accused of other, unrelated, criminal acts. We conclude that the admission of this testimony does not require a reversal.

Directing us to the following excerpts from the transcript, the defendant insists that the district attorney made "numerous references to defendant's arrest on the unrelated charge and the circumstances surrounding it."

Q. And were you involved in any way in that newscast?

A. Uh, yes, I was.

Q. Did you participate in that arrest?

A. Uh, yes, I did.

Q. Where did that arrest take place?

A. The arrest took place at the Coliseum Mart, uh, Hotel on Independence Boulevard. It's about a block or two within the, uh, International House of Pancakes on Independence Boulevard. The, uh, incident took, uh, made quite a stir and, uh
. . .

MR. BENDER: OBJECTION Your Honor.

THE COURT: SUSTAINED.

Q. Do you recall what date that, uh, arrest at the Coliseum Hotel, or the Coliseum Mart Hotel took place?

A. Yes. It was on the 11th of November.

Q. The 11th of November?

A. I mean, I [sic] sorry, the 9th of November.

Q. Now, was that arrest made on November 9th at the Coliseum Mart Hotel in any way related to the, to this case?

MR. BENDER: OBJECTION.

THE COURT: OVERRULED. Answer that question.

A. No, it was not.

MR. BENDER: Your Honor, MOVE TO STRIKE.

THE COURT: Motion DENIED.

Q. Do you see the person here in the courtroom that you arrested on the 9th of November—

A. —uh, yes—

Q. —at the Coliseum Mart?

A. Yes, I do.

Q. Now, when Ms. Hill came down to see you at the Law Enforcement Center on either the 29th or 30th of November, had you charged Marvin Carson with armed robbery in this particular case at that point?

MR. BENDER. OBJECTION, Your Honor.

THE COURT: OVERRULED.

At this point, defense counsel requested a bench conference. The trial court stated that the questioning had not violated its earlier ruling on defendant's motion *in limine*, which prohibited the State from asking questions about the incidents underlying defendant's arrest on the unrelated charge. The trial court felt, and we agree, that Ms. Hill's identification of the defendant from the television broadcast was relevant. In addition, Ms. Hill had already testified without objection about how she had first iden-

tified the defendant. The only additional information elicited during Officer Alsbrook's testimony was that the arrest on 9 November 1984 was not related to the case being tried.

We hold that this additional evidence was not so prejudicial as to require a new trial. The testimony about the defendant's arrest was admitted for the limited purpose of explaining Ms. Hill's initial identification of the defendant.

IV

[3] Defendant's final assignment of error is that the trial court failed to give defendant's written requested instruction on the perils of a single eyewitness identification and that this constituted prejudicial error. Defendant cites *State v. Bradley*, 65 N.C. App. 359, 309 S.E. 2d 510 (1983) for the proposition that the trial court must give a requested instruction in substance when it is correct in law and supported by the evidence. The defendant bears the additional burden, when challenging a jury instruction, to show that the jury was misled or misinformed by the charge as given, *State v. Sledge*, 297 N.C. 227, 235, 254 S.E. 2d 579, 585 (1979) or that a different result would have been reached had the requested instruction been given. N.C. Gen. Stat. Sec. 15A-1443(a) (1983); *State v. Miller*, 69 N.C. App. 392, 402, 317 S.E. 2d 84, 91 (1984).

The trial court is not required to charge the jury in the exact language requested by the defendant. *State v. Smith*, 311 N.C. 287, 290, 316 S.E. 2d 73, 75 (1984). However, when a certain instruction is warranted, the trial court must give the requested instruction at least in substance. *State v. Monk*, 291 N.C. 37, 54, 229 S.E. 2d 163, 174 (1976). Determining whether a requested instruction was given in substance is undeniably a very subjective undertaking. Our appellate courts have been loath to find reversible error based on failure to give a requested jury instruction when in the court's opinion the "in substance" requirement has been fulfilled. *See, e.g., State v. Corn*, 307 N.C. 79, 86, 296 S.E. 2d 261, 266 (1982); *State v. Silhan*, 302 N.C. 223, 252, 275 S.E. 2d 450, 472 (1981); *State v. Rhinehart*, 68 N.C. App. 615, 618, 316 S.E. 2d 118, 121 (1984); *State v. Smith*, 61 N.C. App. 52, 61, 300 S.E. 2d 403, 409 (1983); *State v. Mebane*, 61 N.C. App. 316, 319, 300 S.E. 2d 473, 476 (1983); *State v. Guy and State v. Yandle*, 54 N.C. App.

208, 213, 282 S.E. 2d 560, 563 (1981), *cert. denied,* 304 N.C. 730, 288 S.E. 2d 803 (1982).

Error was found, however, when the trial court gave a general credibility instruction after the defendant had requested an interested-witness instruction. *State v. Puckett,* 54 N.C. App. 576, 581, 284 S.E. 2d 326, 329-30 (1981). The *Puckett* Court noted that it would be error for the trial court to change the sense or to so qualify the requested instruction as to weaken its force. *Id.* Even so, the general rule remains intact: the trial court is not required to use the same language as requested by counsel, even when the language used could have included more details. *State v. Willis,* 61 N.C. App. 23, 39, 300 S.E. 2d 420, 429, *modified and aff'd,* 309 N.C. 451, 306 S.E. 2d 779 (1983).

In this case, the trial court instructed the jury in pertinent part:

I instruct you that the state has the burden of proof of the identity of the defendant as the perpetrator of the crime charged beyond a reasonable doubt. This means that you, the jury, must be satisfied beyond a reasonable doubt that the Defendant, Marvin Carson, was the perpetrator of the crime charged before you may return a verdict of guilty. The main aspects of identification is the observations of the offender by the witness at the time of the offense.

In examining the testimony of the witness, Pamela Hill, as to her observation of the perpetrator at the time of the offense, you should consider the capacity of the witness to make such an observation, through her senses, the opportunity of the witness had [sic] to make an observation, and details, such as, the lighting of the scene of the crime at the time of the incident. You are to consider the mental and physical condition of the witness, the length of time of the observation and any other contention, condition or circumstance which might have tainted or hindered the witness in making her observation.

However, your consideration must go further. The identification of the defendant by the witness, as the perpetrator of the offense, must be purely the product of the witness' recollection of the Defendant and derived only from the

observation made at the time of the offense. In making this determination, you should consider the manner in which the witness was confronted by the defendant after the offense and any circumstances or pressures which might have influenced the witness in making an identification and which might have cast doubt upon, or re-enforced the accuracy of the witness' identification of the Defendant.

I further instruct you that the identification witness is just like any other witness. That is, you should assess the credibility of the identification witness in the same way you would with any other witness. That is, in determining the adequacy of her observation in her capacity to observe. You may take this into account in your consideration of the credibility of the identification witness.

You may consider any occasion upon which the witness failed to make an identification of the Defendant or any occasion upon which the witnesses, witness made an identification that was not consistent with her in-Court identification. Above all, as I have earlier instructed you, the State must prove beyond a reasonable doubt that the Defendant was the perpetrator of the crime charged. If, after weighing all of the testimony, you are not satisfied beyond a reasonable doubt that the Defendant was the perpetrator of the crime charged, it would be your duty to return a verdict of not guilty.

The defendant requested that the following instruction be given:

A conviction based solely on "one eyewitness" identification represents the greatest single threat to the achievement of our ideal that no innocent man shall be punished. Thus, I instruct you that the State has the burden of proving the identity of the Defendant as the perpetrator of a crime charged beyond a reasonable doubt. Although "one eyewitness" identification may be sufficient to satisfy you beyond a reasonable doubt that the Defendant is the perpetrator of the crime charged, you should scrutinize carefully this testimony. You should consider whether or not this testimony is corroborated by known or admitted facts.

If, after weighing the testimony with great caution and careful scrutiny, you are satisfied beyond a reasonable doubt

that the Defendant was the perpetrator of the crime charged, you may return a verdict of guilty. However, if you are not so satisfied, or have a reasonable doubt that the Defendant was the perpetrator of the crime, you will return a verdict of not guilty.

We hold that the trial court's instruction was sufficiently similar in substance to the one requested by defendant. In addition, given the facts of this case, we find that defendant has failed to sustain the burden of proving that his requested instruction was correct in law, supported by the evidence, and that a different result would likely have been reached had the instruction been given. Although some judges and psychologists have noted that "[a] conviction based solely on 'one eyewitness' identification represents the greatest single threat to the achievement of our ideal that no innocent [person] shall be punished," we hesitate to adopt this as an accurate statement of the law as applied to the facts in this case.

This instruction may well have been appropriate had defendant offered expert testimony on the perils of a single eyewitness identification. Expert testimony on the reliability of eyewitness identification is an increasingly popular defense trial strategy. Indeed, our Court has held its exclusion in the proper case reversible error. *See, e.g., Knox,* 78 N.C. App. at 496, 337 S.E. 2d at 157, and the authority cited therein.

Misidentification is a possibility in almost every case. Not surprisingly, it may be more possible in a case in which five eyewitnesses get a glimpse of the perpetrator of a crime than in a case in which a single eyewitness views the perpetrator for an extended time. Great care must therefore be taken in every case to ensure that the identification process is free from unnecessary suggestiveness, error or bias, and trial courts should alert juries to these hazards. We believe that the trial court in this case adequately performed this task. Interestingly, the instruction given by the trial court here contains almost the verbatim language this Court suggested might "guard against the baleful effects of [misidentification]" in *State v. Smith,* 65 N.C. App. 684, 687, 309 S.E. 2d 695, 697 (1983), *rev'd,* 311 N.C. 287, 316 S.E. 2d 73 (1984) (Trial court's instruction was adequate in substance on the facts of the case.).

No error.

Judges JOHNSON and MARTIN concur.