An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-20

NORTH CAROLINA COURT OF APPEALS

Filed:  19 August 2014

STATE OF NORTH CAROLINA

v.

Cabarrus County
No. 08 CRS 7351

HUNTER JAY LEWIS


Appeal by defendant from judgment entered 3 July 2013 by Judge Tanya T. Wallace in Cabarrus County Superior Court.  Heard in the Court of Appeals 4 August 2014.


> *Attorney General Roy Cooper, by Special Deputy Attorney General M. A. Kelly Chambers, for the State.*

> *Appellate Defender Staples Hughes, by Assistant Appellate Defender Constance E. Widenhouse, for defendant-appellant.*


ERVIN, Judge.


Defendant Hunter Jay Lewis appeals from a judgment sentencing him to an active term of imprisonment based upon his conviction for discharging a firearm into an occupied vehicle. On appeal, Defendant contends that the trial court erred by refusing to instruct the jury that a vehicle may be a deadly weapon.  After careful consideration of Defendant's challenge to the trial court's judgment in light of the record and the

applicable law, we conclude that the trial court's judgment should remain undisturbed.

## I. Factual Background

### A. Substantive Facts

On the night of 9 August 2008, Defendant fired a .40 caliber handgun into a vehicle driven by Asad Rana while their vehicles were stopped side-by-side at a traffic signal governing the flow of traffic at the intersection of Bruton Smith Boulevard and Weddington Road in Concord. Prior to the shooting, Defendant and Mr. Rana had been involved in a confrontation on Interstate 85, during which one or both drivers followed closely behind each other and flashed their lights at each other, with the evidence as to which of the two men initiated or escalated this aggressive conduct being in substantial conflict.

Mr. Rana and two of Defendant's passengers testified that Defendant followed Mr. Rana off of Interstate 85 at Exit 49 immediately prior to the shooting while Defendant averred that Mr. Rana was "right on me" when Defendant decided to leave Interstate 85 at that location. However, the undisputed evidence indicates that, after exiting Interstate 85, the vehicles driven by Defendant and Mr. Rana wound up beside each

other at the intersection at which the shooting actually occurred.

According to his trial testimony, Defendant claimed that he felt threatened by Mr. Rana's driving and "just wanted him to stop chasing us." When Mr. Rana rolled down his car window at the intersection, Defendant displayed his gun and "yelled, I have a gun," at which point Mr. Rana "said something to the effect that he didn't care, that he was going to either kill [Defendant] or kill us." At that point, given that he feared for his own safety and that of his passengers, a group that included his teenage son, Defendant "reached out and . . . shot at [Mr. Rana's] tire." After this shot had been fired, Defendant asserted that Mr. Rana "lunged his car at [Defendant's] vehicle."[1]

In spite of the fact that Defendant "heard a crunch" after Mr. Rana "lunged" at his vehicle, Defendant "wasn't really sure if it was me hitting something or him hitting me" despite the fact that the two vehicles "were touching." Although he did not "believe [Mr. Rana had] rammed" him with his car, Defendant

---

[1]The extent to which Mr. Rana did, in fact, "lunge" his vehicle at Defendant's vehicle was, like virtually everything else in this case, an issue about which the evidence was in sharp dispute. However, for purposes of evaluating the validity of Defendant's challenge to the trial court's refusal to deliver Defendant's requested instruction, we must take the evidence in the light most favorable to Defendant.

thought that Mr. Rana's "car came into contact with [Defendant's] car[.]" As a result, Defendant testified that he fired a second shot at Mr. Rana's vehicle in the hope that he would be able to hit and force the deployment of Mr. Rana's airbag, explaining that, "I was scared. I just – because he came at me with his car. I was just – I was scared. There had to be a stop." After firing this second shot, Defendant drove through the intersection, performed an unlawful U-turn, returned to Interstate 85, and traveled to his home.

## B. Procedural History

On 19 August 2008, a warrant for arrest charging Defendant with discharging a firearm into an occupied vehicle was issued. On 8 September 2008, the Cabarrus County grand jury returned a bill of indictment charging Defendant with three counts of discharging a firearm into an occupied vehicle. The charges against Defendant came on for trial before the trial court and a jury at the 25 June 2013 criminal session of the Cabarrus County Superior Court. On 3 July 2013, the jury returned a verdict convicting Defendant of one count of discharging a firearm into an occupied vehicle and acquitting him of a second count of discharging a firearm into an occupied vehicle.[2] At the

---

[2]The State voluntarily dismissed the third count of shooting into an occupied vehicle contained in the indictment that had been returned against Defendant in this case.

conclusion of the ensuing sentencing hearing, the trial court entered a judgment sentencing Defendant to a term of 48 to 67 months imprisonment. Defendant noted an appeal to this Court from the trial court's judgment.

## II. Substantive Legal Analysis

In his sole challenge to the trial court's judgment, Defendant contends that the trial court erred by refusing to deliver that portion of his proposed instruction concerning the law of self-defense, defense of a family member, and defense of a third person to the effect that a vehicle could be a deadly weapon. We do not find Defendant's argument persuasive.

After the presentation of the evidence and the arguments of counsel at Defendant's trial, the trial court instructed the jury concerning the issue of whether Defendant acted in self-defense and for the purpose of defending a family member or a third person in accordance with N.C.P.J.I. 308.45 and N.C.P.J.I. 308.47, stating that:

> The State has the burden of proving from the evidence, beyond a reasonable doubt, that the defendant's action was not in defense of self, or a family member, or a third person. If the circumstances would have created a reasonable belief in the mind of a person of ordinary firmness that the assault was necessary or appeared to be necessary to protect self, a family member, or a third person from imminent death or great bodily harm, and the circumstances did create such belief in the defendant's mind

at the time the defendant acted, such assault would be justified by a defense of self, a family member, or a third person. In such case, self-defense need only be apparently not actually necessary. You, the jury, determine the reasonableness of the defendant's belief from the circumstances appearing to the defendant at the time.

. . . .

The defendant had the right to use only such force as reasonably appeared necessary to the defendant under the circumstances to protect self, a family member, or a third person from death or great bodily harm. In making this determination, you should consider the circumstances as you find them to have existed from the evidence, including the size, age and strength of the defendant and the family member or third person as compared to the victim; the fierceness of the assault, if any, upon self, family member or third person; or whether the victim had a weapon in the victim's possession. You, the jury, determine the reasonableness of the defendant's belief from the circumstances appearing to the defendant at the time.

At the jury instruction conference, Defendant had requested the trial court to supplement its instruction concerning self-defense, defense of a family member, and defense of a third person by stating that:

A motor vehicle may or may not be a deadly weapon, dependent on its manner [of] use. You, the jury, will decide whether you believe Mr. Rana used the motor vehicle in a manner which constituted the use of a deadly weapon, and whether this fact would be relevant in your consideration of any defenses.

Although the trial court declined to instruct the jury in accordance with Defendant's request, it advised Defendant's trial counsel that he was free "to argue that to the jury."

"When instructing the jury, the trial court has the duty to declare and explain the law arising on the evidence." *State v. Mathis*, 349 N.C. 503, 514, 509 S.E.2d 155, 162 (1998). "[A] trial judge is not required to give requested instructions verbatim, [but] is required to give the requested instruction at least in substance if it is a correct statement of the law and supported by the evidence." *State v. Corn*, 307 N.C. 79, 86, 296 S.E.2d 261, 266 (1982) (citation omitted). As long as the jury hears the substance of the requested instruction, "the trial court is not required to use the same language as requested by counsel, even when the language used could have included more details." *State v. Carson*, 80 N.C. App. 620, 626, 343 S.E.2d 275, 279 (1986). We review challenges to the substance of a trial court's jury instructions using a *de novo* standard of review, *State v. Osorio*, 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009), under which we "consider[] the matter anew and freely substitute[ our] own judgment for that of the trial court." *State v. Sanders*, 208 N.C. App. 142, 144, 701 S.E.2d 380,382 (2010).

A deadly weapon can be "'any instrument which is likely to produce death or great bodily harm, under the circumstances of its use,'" with this determination depending, in many instances, "'more upon the manner of its use, and the condition of the person assaulted, than upon the intrinsic character of the weapon itself.'" *State v. Palmer*, 293 N.C. 633, 642-43, 239 S.E.2d 406, 412-13 (1977) (quoting *State v. Smith*, 187 N.C. 469, 470, 121 S.E. 737, 737 (1924)). As Defendant suggests, an automobile may be a deadly weapon depending upon the manner in which it is used. *State v. Clark*, 201 N.C. App. 319, 324-25, 689 S.E.2d 553, 557-58 (2009). As a result, while "[a] car sitting idle may not be deadly," an automobile that is driven "at a high rate of speed directly at [another's] vehicle[] in their lane of travel" is being used as a deadly weapon. *State v. Batchelor*, 167 N.C. App. 797, 800, 606 S.E.2d 422, 424 (2005); *see also State v. Jones*, 353 N.C. 159, 164, 538 S.E.2d 917, 922 (2000) (stating that "an automobile can be a deadly weapon if it is driven in a reckless or dangerous manner"). As a result, given that the extent to which Mr. Rana used a deadly weapon is clearly relevant to an evaluation of the steps that Defendant was entitled to take in his own defense or the defense of a family member or a third person, the ultimate issue raised by Defendant's argument is the extent, if any, to which the

record supported an inference that Mr. Rana's vehicle was used as a deadly weapon.

Although Defendant testified that Mr. Rana "lunged" his vehicle at Defendant's vehicle and that there was contact between the two vehicles, the only damage that might have been inflicted to Defendant's vehicle during this incident were scratches to the driver's side mirror. In addition, the record is totally devoid of any indication that Mr. Rana moved his vehicle toward Defendant's vehicle at a high rate of speed or that the vehicle in which Defendant and his passengers were situated would not have provided adequate protection from any injury to which the occupants of Defendant's vehicle were reasonably exposed given the nature and extent of Mr. Rana's actions. On the contrary, Defendant testified that Mr. Rana did not "ram" his vehicle and that the two vehicles merely made contact. The fact that the record contains evidence that Mr. Rana's driving posed a substantial risk to Defendant and his passengers while the two vehicles were traveling on Interstate 85 at a much higher rate of speed has no bearing on the extent to which the manner in which Mr. Rana used his vehicle at the intersection at which Defendant shot at Mr. Rana's vehicle posed a risk of death or great bodily harm to Defendant and the occupants of his vehicle. Similarly, the fact that the record

contains evidence to the effect that Mr. Rana threatened to kill Defendant at the intersection at which the shots were fired does nothing to establish that Mr. Rana used his vehicle in such a manner as to create risk of death or great bodily injury to the Defendant and the occupants of his vehicle. As a result, we conclude that the trial court did not err by refusing to instruct the jury that it could find that Mr. Rana's vehicle was a deadly weapon.

## III. Conclusion

Thus, for the reasons set forth above, Defendant's sole challenge to the trial court's judgment lacks merit. As a result, the trial court's judgment should, and hereby does, remain undisturbed.

NO ERROR.

Judges ROBERT C. HUNTER and STEPHENS concur.

Report per Rule 30(e).