STATE OF NORTH CAROLINA v. RICHARD DALE JOHNSON

No. 8512SC726

(Filed 21 January 1986)

**Homicide § 21.4— defendant as perpetrator of crime—insufficiency of evidence**

The trial court in a homicide prosecution erred in denying defendant's motion to dismiss where the evidence tended to show that the victim's body was found in a motel room; he had engaged in some sexual activity at or about the time of his death; his automobile in which he arrived at the motel was found in a parking lot at Ft. Bragg within two hours of the time he checked into the motel; defendant was stationed at Ft. Bragg at the time of the murder; there was no evidence that defendant and the victim knew each other, were ever seen together, or had any association or relationship whatsoever; there was no evidence that defendant was ever in the motel room where the victim's body was found or that defendant was ever in or about the victim's automobile; there was nothing in defendant's statements to officers which would in any way connect defendant to the murder; and analysis of hair samples revealing that nine hairs from the motel bed coverings and one hair taken from a towel beneath the victim's car were microscopically consistent with defendant's hair was insufficient, standing alone, to take the case to the jury.

Judge JOHNSON concurs in the result.

APPEAL by defendant from *Farmer, Judge.* Judgment entered 12 February 1985 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 6 January 1986.

Defendant was indicted and tried for the first degree murder of Luther Bailey. The State's evidence tends to show the following: On 11 February 1983 the nude body of Luther Bailey was found by a maid in Room 319 of the Holiday Inn on Highway 301 in Fayetteville. The body was lying on its back with blood on its head, face, chest, and the palms and backs of its hands. There were also bloodstains on the wall, television set, television stand, and a dresser. There were two open jars of Vaseline in the room. The right side of the deceased's head was severely bruised, and his right eye was swollen shut. The officer investigating the incident collected all the bed coverings, clothing, a piece of carpet, and several pieces of wallpaper. He also dusted the entire room for fingerprints, and collected blood samples from the sink and bathtub.

Dr. R. L. Thompson, a forensic pathologist with the Office of the Chief Medical Examiner in Chapel Hill, examined the body and performed an autopsy on it on 12 February 1983. He collected anal and oral swabs and smears which contained semen and a petroleum-type jelly. He also collected fingernail scrapings and clippings, swabs of the blood on each hand, samples of head and pubic hair, a blood sample, and a set of fingerprint impressions. Dr. Thompson testified that during his autopsy he found several bruises on the head, face, and limbs of the deceased, some small lacerations on the face and inside the lips, and abrasions on the back of the left hand and on both legs around the knees. He also found fractures of the nasal bone, the hyoid bone, the larynx, three ribs on the right side, and the upper jaw on both sides. Dr. Thompson further testified that in his opinion Bailey had suffered a blunt force trauma which was not immediately fatal and had died from some form of strangulation. He testified that the strangulation was not by means of fingers or a rope, but rather by some force or pressure which he could not identify.

Luther Bailey's brother testified that he had last seen his brother at about 4:00 p.m. on 10 February. He further stated that his brother was approximately five feet ten inches tall and characteristically kept the driver's seat in his Buick pushed way back. He had no knowledge as to whether his brother was homosexual.

The desk clerk at the Holiday Inn testified that Luther Bailey checked in "around ten-fifteen" on the evening of 10 February and that he had previously made a reservation. She also testified that the victim's automobile was a Buick and that the license plate number was TCY-212.

Luther Bailey's Buick was found by an Army sergeant in a parking lot at Fort Bragg between 11:00 p.m. and midnight on 10 February 1983. He noticed the car again the next day and then informed the military police. Eighteen thousand men lived within a half-mile radius of the lot where the car was found. When the police searched the car, they found a white towel underneath the car, which was later found to have several hairs on it. They also dusted the car for fingerprints. No traces of blood were found either inside or outside the car.

On 16 April 1983 at approximately 10:10 p.m., the Fayetteville police desk received a telephone call. The caller identified himself as Dale Johnson and said he had information to give the police about his roommate, named Richard Johnson, who was killing people in the Fayetteville area. The caller said a reward had been offered in connection with one of the killings but that he was not interested in the reward. He also asked for a police officer to come talk to him at the VFW Club, but no officer was immediately available. For reasons not readily apparent from the record in this case, the police did not follow up on the call until 10 days later. On 26 April 1983, a police officer went to the VFW Club and asked the manager about defendant. The manager stated that defendant was a frequent visitor at the club, but could not positively place defendant at the club on 16 April. Also on 26 April 1983, two officers went to the 307th Medical Battalion and spoke with defendant, who waived his Miranda rights. Defendant denied ever being at the Holiday Inn, but said he went to the VFW Club all the time. He said he did not have a roommate with a name similar to his. Defendant stated that "[i]f any queer would try anything" with him, he would "stomp their ass." Defendant then gave the officers samples of his head hair, pubic hair, and blood, and impressions of his fingerprints.

Sometime later defendant was discharged from the Army and moved to California. On 23 May 1983 defendant was arrested and two Fayetteville police officers came to California to inter-

view him. Defendant, in response to questions, stated, "I don't remember being at the Holiday Inn," and "if I did [kill Bailey], I don't recall."

Defendant then told the officers about nightmares he had been having concerning some of his experiences in Vietnam. He wrote out a statement as follows:

> I have been drinking for several years very heavily at times. At times, I have a hard time remembering what happened after drinking. I have had nightmares about experiences in Vietnam.

> Several months ago, I started having nightmares about being in a fight, sometimes awakening in a cold sweat. In this nightmare, I was confronted by a white male about my age and a little taller than I. We are in a small room and something happened to cause the man to hit me with his fist. I hit him back. There was a brief fist fight. He falls down, I kick him. I turned to leave the room, walking outside. I turned to see him getting up and he is on his hands and knees.

Defendant returned to Fayetteville with the officers and was interrogated again on 26 May 1983. Asked "What would you do if a homosexual made an overt action towards you?" defendant answered, "I would try to beat the shit out of him." Asked if he had a drinking problem, defendant said yes. Asked if he had killed Luther Bailey, defendant said, "I'm not going to deny it. I'm not going to admit killing anyone. I just don't remember."

None of the fingerprints found in the motel room or in Luther Bailey's car matched those of defendant. All of the blood in the room was consistent with Bailey's blood group, which was Type O. The mattress pad had two semen stains, one from a person with Type O blood and one from a person with Type A blood, which was defendant's blood type. Type A blood is common to 40% of the population. There was also testimony showing that defendant was a secretor, which is true of 80% of the population. Thus defendant was a Type A secretor and a member of a pool of people comprising 32% of the population.

An SBI agent testified regarding the analysis of hair samples taken from Luther Bailey and defendant. Of about 49 hairs recovered from the motel room and the towel found under the car, the

agent found nine hairs useless for comparison, seven pubic hairs and seven head hairs microscopically consistent with Luther Bailey's hairs, three Negro pubic hairs, and twelve Caucasian head and pubic hairs not consistent with either Bailey or defendant. Ten pubic hairs were found to be microscopically consistent with defendant's hair. Nine of these ten hairs came from the bed coverings and one came from the towel found beneath Bailey's car.

The agent further testified that an examination of hair can never be used as the basis for a positive personal identification because it reveals nothing about the age or sex of a person, or when the hair was deposited.

Defendant offered no evidence, and his motion to dismiss was denied. The case was submitted to the jury on the issues of first and second degree murder. The jury returned a verdict of guilty of second degree murder, and from a judgment of thirty years imprisonment entered on the verdict, defendant appealed.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Steve Nimocks and Associate Attorney General Randy Meares, for the State.*

*Assistant Appellate Defender Geoffrey C. Mangum, for defendant, appellant.*

HEDRICK, Chief Judge.

We consider only the question of whether the trial court erred in denying defendant's motion for judgment as of nonsuit. In ruling on this question we assume that all the evidence challenged by defendant on appeal was properly admitted.

The State's approach to this case on appeal is summed up and illustrated by the unusual statement in its brief that ". . . the State, in the case at bar, produced substantial evidence raising more than a reasonable inference that defendant did, with malice and without premeditation or deliberation, murder Luther Bailey. Defendant has not presented any evidence to rebut this strong inference that he committed the murder." In response to this assertion, defendant contends that "[a]ll of the State's evidence does no more than create a suspicion that defendant killed Luther Bailey. . . ."

After considering all of the evidence in the light most favorable to the State, and giving to the State the benefit of every inference reasonably deducible from the evidence, we hold that the evidence, when so considered, is hardly sufficient to raise even a suspicion that defendant killed Luther Bailey. The evidence in the record before us is insufficient to support the jury's verdict of guilty, and thus the trial court erred in denying defendant's motion to dismiss.

There are several examples of the lack of substantial evidence against defendant in this case. There is no evidence that defendant and the victim knew each other, were ever seen together, or had any association or relationship whatsoever. There is no evidence that defendant was ever in the motel room where the victim's body was found, nor is there any evidence that defendant was ever in or about the victim's automobile. The evidence falls far short of raising an inference that defendant made the phone call to the police on 16 April 1983, and even if such an inference may be reasonably deducible from the evidence, it does nothing more than show that somebody was killing people in Fayetteville. It does not disclose that defendant killed Bailey.

Furthermore, there is absolutely nothing to be gleaned from defendant's statements to the officers that would in any way connect defendant to the murder in the motel room. Defendant's statements that he had a dream regarding a fight in a "small room," and that he would likely react violently if approached by a homosexual do nothing whatsoever to strengthen the State's case. And finally, defendant's statement to the officers that "I'm not going to deny it. I'm not going to admit killing anyone. I just don't remember," does not supply the critical bit of evidence necessary to support a finding that defendant committed the crime with which he is charged.

We note further that evidence of microscopic hair analysis is insufficient to take a case to the jury absent some other substantial evidence of guilt. *State v. Stallings*, 77 N.C. App. 189, 334 S.E. 2d 485 (1985). This is so because "comparative microscopy . . . serves to exclude classes of individuals from consideration and is conclusive, if at all, only to negative identity." *Id.* at 486.

From the record we determine that the theory of the investigating officers and the prosecution appears to be that the victim was homosexual, and that defendant killed him as a result of sexual advances made by the victim toward defendant. The only evidence in the record tending to show that the victim was homosexual is that the victim had engaged in some sexual activity at or about the time of his death, but this evidence falls far short of establishing as a fact that the victim was indeed homosexual. The same evidence would support a finding that the victim was homosexually raped and killed. There is nothing in the record to indicate that the investigating officers made any effort to determine whether the victim was homosexual. Indeed, the record before us is remarkable for what it fails to show rather than what it discloses.

For example, although the victim's brother stated that Bailey left Rocky Mount at approximately 4:00 p.m. to go to Chapel Hill and then to Fayetteville, there is nothing in the evidence to indicate that the investigators made any effort whatsoever to trace the victim's activities between the time he left Rocky Mount and his arrival at the motel at 10:15 p.m. on 10 February 1983. Although much is said about the fact that the victim's automobile was observed parked at Fort Bragg between 11:00 and 12 midnight on 10 February, the evidence does not disclose the distance between the motel and the place where the automobile was parked. Although the police apparently received the telephone call described in the evidence on 16 April 1983, there is no explanation in the record as to why such vital evidence was ignored for ten days. If defendant and the victim engaged in a fight such as that described in the evidence, and if the victim, as described, was so much larger than defendant, if would seem to follow that defendant would have at least suffered some injuries in the fight; yet there is nothing in the evidence to indicate that the investigators made any effort to determine whether defendant actually bore any evidence of physical injuries as a result of such a fight. Such evidence could possibly have been obtained from defendant's associates at Fort Bragg, yet there is no showing that anyone was ever asked if defendant bore any physical injuries around 11 February 1983.

We have carefully examined the evidence in the record before us and conclude that it is insufficient to raise an inference

that defendant killed Luther Bailey. The record is devoid of sub-
stantial evidence of defendant's guilt. The trial court erred in de-
nying defendant's motion for judgment as of nonsuit.

Reversed.

Judge JOHNSON concurs in the result.

Judge PHILLIPS concurs.