STATE OF NORTH CAROLINA v. JAMES DARRELL FAIRCLOTH

No. 8912SC1085

(Filed 7 August 1990)

**1. Rape and Allied Offenses § 4.1 (NCI3d)— other offenses committed by defendant—admissibility of evidence**

In a prosecution of defendant for first degree rape and taking indecent liberties with a child the trial court did not err in admitting testimony by the victim concerning two incidents of alleged sexual assault by defendant upon her prior to the incident giving rise to the charges here, since all three episodes involved sexual conduct by defendant upon the victim; all three involved the victim's being alone or under the sole supervision of defendant; all three occurred when the victim was in bed; all occurred within a 28-month period; and the prior incidents were thus sufficiently similar to the charged crime and were sufficiently near in time to it so that N.C.G.S. § 8C-1, Rule 403 did not require the judge to exclude the evidence. N.C.G.S. § 8C-1, Rule 404(b).

**Am Jur 2d, Evidence §§ 321, 324-326.**

**2. Rape and Allied Offenses § 4 (NCI3d); Criminal Law § 68 (NCI3d) — expert testimony concerning hair — admissibility — failure to assign error to objectionable portion of answer — objection waived**

Testimony by an expert in forensic hair identification that hairs found on the victim and on a sheet of the victim's bed could have originated from defendant was relevant and admissible in this prosecution for first degree rape and taking indecent liberties with a child. Although further testimony by the witness that "it would be improbable that these hairs would have originated from another individual" was based on nonscientific considerations and constituted an expression of opinion as to defendant's guilt in violation of N.C.G.S. § 8C-1, Rules 405(a), 608(a) and 702, defendant waived his right to assert such error on appeal where the testimony was given in response to a proper question and defendant made no motion to strike the objectionable portion of the witness's answer.

**Am Jur 2d, Expert and Opinion Evidence §§ 278, 301; Rape § 68.**

APPEAL by defendant from judgment entered 14 June 1989 in CUMBERLAND County Superior Court by *Judge Joe Freeman Britt*. Heard in the Court of Appeals 30 May 1990.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Jane T. Friedensen, for the State.*

*Beaver, Thompson, Holt, and Richardson, P.A., by H. Gerald Beaver, for defendant-appellant.*

DUNCAN, Judge.

A jury convicted the defendant, James Darrell Faircloth, of one count of first-degree rape and one count of taking indecent liberties with a child. The judge sentenced defendant to a term of life imprisonment for the rape conviction and to a consecutive term of three years for the indecent liberties conviction. On appeal, defendant challenges the admission of testimony about alleged prior sexual assaults by him upon the victim and the admission of expert testimony concerning the origin of hair samples found at the crime scene. We hold that the judge properly allowed the jury to hear evidence of the prior sexual acts, and we hold that defendant has waived his right to assign error to the expert testimony.

I

The prosecuting witness, to whom we shall refer as "A.G.," is the stepdaughter of defendant. At the time of trial, A.G. was 13 years old. The State presented evidence showing that on 1 April 1988, A.G. and her mother were living at the Holiday Motel in Fayetteville, North Carolina. A.G.'s natural father was visiting from Florida that day and was staying in the room next to A.G.'s room. Defendant and A.G.'s mother had separated from each other prior to 1 April, and A.G. had not seen defendant for several days.

On the evening of 1 April, A.G. and her father went to a movie. When they returned to the motel at 10:00 P.M., A.G.'s mother was not there. A.G. went to her room alone and fell asleep, with the lights in the room turned on, while watching television.

A.G. awoke around 3:30 A.M. when she felt someone holding her by the waist. When she attempted to get up, she could not. A.G. testified that she looked to see who was holding her and saw that it was defendant. Defendant was not wearing clothing. He asked A.G. where her mother was and, when A.G. said she didn't know, defendant said "Well, fine, then. I've got plenty of time." Defendant then raped A.G.

Dr. William Barrington testified that he examined A.G. at the Cape Fear Valley Hospital emergency room on 2 April. A.G. told Dr. Barrington that she had been raped and had been struck on the jaw. The examination showed her jaw to be tender, but there was no evidence of any bruising nor of any kind of abrasion. Dr. Barrington also performed a pelvic exam on A.G. and found no evidence of external trauma, nor was there any evidence of lacerations or abrasions on the vagina and cervix, and the opening of the uterus appeared normal.

Brenda Bissette, of the State Bureau of Investigation, testified that she examined underwear and vaginal smears and swabs from A.G.'s rape kit. Additionally, she analyzed blood samples from A.G. and from defendant and testified that both defendant and A.G. secrete type O blood, a type shared by 36% of the population. Agent Bissette found semen present in the underwear, smears and swabs and found the semen to be from a person who secreted type O blood.

Defendant's evidence showed that as of 1 April 1988 he had been residing with his aunt, Penny Marie McKay, for approximately

two months. Ms. McKay testified that, on the night and morning in question, defendant was at her home, having returned there at 1:45 A.M. on the morning of 2 April. Defendant was coughing, had a cold, and went into the bathroom, coughing and vomiting. Ms. McKay testified that she heard defendant vomiting at 2:30 A.M., and that between the hours of 3:00 and 4:00 A.M. she could hear defendant snoring. Cecilia McKay, defendant's cousin and Penny McKay's daughter, corroborated her mother's testimony.

A.G.'s father testified as a defense witness and stated that he heard no noises coming from A.G.'s room during the early hours of 2 April. He first learned of the rape at 7:30 that morning.

Additional facts relevant to the questions on appeal are set out below.

II

[1] Defendant first assigns error to the admission of testimony by A.G. concerning two incidents of alleged sexual assault by defendant upon her prior to the 2 April incident.

Over objection, the judge permitted A.G. to testify that, on or about 1 January 1986, she was at home alone with defendant. A.G. fell asleep on the top bunk of a set of bunk beds in her room. A.G. awakened later on the bottom bunk. When she turned over to go back to sleep, defendant pulled her back over. Defendant told her "It's too hot in here for you to have your shorts on," and he removed A.G.'s shorts and panties. He then performed cunnilingus on her.

Over further objection, A.G. testified that, one night when she and defendant were at home alone, defendant came into her room. Defendant turned off the lamp, telling A.G. she was too big to sleep with a light on. Defendant then went into the bathroom and remained there for a long time. When defendant emerged, he was not wearing clothes. Defendant lay beside A.G. on the bed and told her to rub his chest. A.G. refused. Defendant then grabbed A.G.'s hand and started to rub his chest with it. A.G. snatched her hand away. Defendant got up and went back into the bathroom. When A.G. was half asleep, defendant got back into her bed and started to pull at her shorts. A.G. began to scream. Defendant told A.G. to hush, and, when she would not, defendant left her. A.G. testified she was not certain as to the date of this incident, but believed it had occurred in 1987.

STATE v. FAIRCLOTH

[99 N.C. App. 685 (1990)]

Defendant argues that the admission of A.G.'s testimony about the two incidents was improper under Rule 404(b) of the North Carolina Rules of Evidence because the evidence was irrelevant to the question of defendant's guilt for the 2 April rape. He contends that A.G.'s testimony met none of the "statutorily set forth exceptions to the rule of exclusion for prior bad acts" and was offered only as evidence of defendant's character. This issue, a familiar one in sexual-offense cases, was recently addressed by our Supreme Court in *State v. Coffey*, 326 N.C. 268, 389 S.E.2d 48 (1990).

Discussing whether Rule 404(b) operates as a "general rule of exclusion," *see* 1 Brandis on North Carolina Evidence § 91 (3d ed. 1988) (one line of pre-Rule cases stated general rule of exclusion and list of exceptions), the Court said that a careful reading of the Rule "clearly shows [that] evidence of other offenses is *admissible* so long as it is *relevant to any fact or issue other than* the character of the accused." *Id.* at 278, 389 S.E.2d at 54 (emphasis supplied; citations omitted). The "clear general rule," the Court said, is that Rule 404(b) is one of "*inclusion* of relevant evidence of other crimes . . . subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *Id.* at 278-79, 389 S.E.2d at 54 (emphasis supplied). We must determine, therefore, whether A.G.'s testimony was relevant to any issue other than defendant's character.

As is frequently noted, "North Carolina is quite liberal in admitting evidence of other sex offenses" committed upon the victim of the crime for which the defendant is on trial. *State v. Miller*, 321 N.C. 445, 454, 364 S.E.2d 387, 392 (1988) (citations omitted). Such evidence is often viewed as showing a "common scheme or plan" by the defendant to sexually abuse the victim. *See State v. Shamsid-Deen*, 324 N.C. 437, 444, 379 S.E.2d 842, 847 (1989). The State here contends that A.G.'s testimony was relevant to show, among other things, defendant's plan to abuse her when she was asleep and in her mother's absence. We agree with the State that the evidence was relevant under the precedent to this date. We thus hold that the evidence was not exclusively directed at defendant's character so as to run afoul of Rule 404(b).

To be admissible, evidence of prior sexual abuse must relate to incidents sufficiently similar and not so remote in time that

they are more probative than prejudicial under the balancing test of N.C. Gen. Stat. § 8C-1, R. Evid. 403 (1988). *E.g., State v. Boyd,* 321 N.C. 574, 577, 364 S.E.2d 118, 119 (1988). Defendant argues that the two alleged incidents occurring over a 28-month period prior to the charged offense, and the separation of defendant from A.G.'s mother in the interim, caused any probative value of the evidence to be outweighed by its prejudicial effect. He further contends that A.G.'s testimony placed him in the untenable position of having to rebut uncorroborated evidence of uncharged misconduct.

However, under the applicable precedent, the prior incidents about which A.G. testified were sufficiently similar to the charged crime and were sufficiently near in time to it that Rule 403 did not require the judge to exclude the evidence. All three episodes involved sexual conduct by defendant upon A.G., all three involved A.G.'s being either alone or under the sole supervision of defendant, and all three occurred when A.G. was in bed. That the episodes occurred over some 28 months, moreover, did not make the evidence impermissibly remote. In *State v. Roberson,* we held that a lapse of nearly five years between events involving the defendant and two witnesses did not "diminish the similarities between the acts," especially in light of testimony that the defendant's daughter had been similarly touched in the year before trial. 93 N.C. App. 83, 85, 376 S.E.2d 486, 487-88, *disc. review denied,* 324 N.C. 435, 379 S.E.2d 247 (1989). Although the latter criterion is not met here, this case involves three instances of similar conduct against the same victim within a 28-month span. We do not believe, on these facts, that the time period is so great as to erode the relevance of the first two incidents to the charged offense. We hold, therefore, that the judge did not abuse his discretion under the balancing test of Rule 403, *see Boyd,* 321 N.C. at 578, 364 S.E.2d at 120, and that A.G.'s testimony was properly admitted under that Rule.

Holding that A.G.'s testimony was permissible under Rules 403 and 404(b), we overrule this assignment of error.

III

[2] Defendant next assigns error to testimony by State Bureau of Investigation Technician Scott Worsham, a forensic chemist who testified at trial as an expert in the field of forensic hair examination and identification. Agent Worsham stated that he compared pubic-hair samples taken from defendant with samples obtained from a pubic-hair combing of A.G. and obtained from the bottom

bed sheet of A.G.'s bed at the Holiday Motel. According to Agent Worsham, microscopic comparison showed the samples taken from defendant to be consistent with one pubic hair taken from the combing and with one pubic hair taken from the bed sheet. Subsequent to that testimony, this exchange occurred:

> [The State]: Mr. Worsham, based upon your training and expertise, do you have an opinion as to what conclusions can be drawn from hairs that are found to be microscopically consistent, sir?
>
> [Defense Lawyer Davis]: Objection.
>
> The Court: Overruled.
>
> A: Yes, it would be my opinion that, based on consistencies which I found in the internal characteristics of the hair and pubic hair combings, as well as the hair on the sheet, that both of these pubic hairs could have originated from James Faircloth, and it is my opinion that it would be improbable that these hairs would have originated from another individual.

On cross-examination, which immediately followed this answer, Agent Worsham elaborated:

> Q: You're saying [the hairs] could have originated from Darrell Faircloth? It is also possible that [they] could have originated from somebody else, isn't it?
>
> A: That's correct. It is always possible that there exists another individual or other individuals in the population who might have a pubic hair that is microscopically consistent with the pubic hairs which I observed in this case. However, that person would have had to have been in contact with both the bed sheet and also the pubic area of [A.G.] and, as I stated, in my opinion, that would be impossible for another person to achieve that.

Defendant argues that the judge erred by overruling his objection in that the State's question solicited testimony that exceeded the boundaries of Agent Worsham's expertise. Although we disagree that the question was improper, we do agree with defendant's contention that Agent Worsham's testimony went beyond acceptable bounds. However, defendant did not move to strike the objectionable responses by Agent Worsham, and thus he has waived his right to assign this error on appeal.

Hair-analysis evidence is admissible if relevant. *State v. Hannah*, 312 N.C. 286, 294, 322 S.E.2d 148, 154 (1984). Relevant evidence is that having any logical tendency, however slight, to prove a fact at issue in the case. N.C. Gen. Stat. § 8C-1, R. Evid. 401 (1988); *see also id*. Agent Worsham's testimony as to the consistency of the hair samples tended to support A.G.'s account of the events of 2 April, and thus that portion of Agent Worsham's answer that the hairs "could have originated from James Faircloth" was relevant and admissible. *See State v. Pratt*, 306 N.C. 673, 678-79, 295 S.E.2d 462, 466 (1982); *see also State v. Stallings*, 77 N.C. App. 189, 191, 334 S.E.2d 485, 486 (1985), *disc. review denied*, 315 N.C. 596, 341 S.E.2d 36 (1986) (when combined with "other substantial evidence," comparative-microscopy evidence may carry case to jury).

Unlike fingerprints, however, comparative microscopy of hair is not accepted as reliable evidence to positively identify a person. *Stallings*, 77 N.C. App. at 191, 334 S.E.2d at 486. "Rather, it serves to exclude classes of individuals from consideration and is conclusive, if at all, only to negative identity." *Id*. (citations omitted); *accord, State v. Johnson*, 78 N.C. App. 729, 734, 338 S.E.2d 584, 587, *disc. review denied*, 316 N.C. 382, 342 S.E.2d 902 (1986). Agent Worsham's testimony that "it would be improbable that these hairs would have originated from another individual" was, effectively, a positive identification of defendant derived from the hair evidence.

Compounding the problem, it is apparent from the agent's answer on cross-examination that his opinion about the "improbability" of the hair originating from a source other than defendant was based on non-scientific considerations. Agent Worsham, as an expert in hair examination and identification, was no better qualified than the jury to determine that it would have been "impossible" for another person to have been in contact with the bed sheet and A.G.'s pubic area. *See State v. Marshall*, 92 N.C. App. 398, 404, 374 S.E.2d 874, 877 (1988). Agent Worsham's opinion addressed the credibility of other witnesses and was an expression of opinion as to defendant's guilt and thus violated Rules 405(a), 608(a) and 702 of the North Carolina Rules of Evidence. *See State v. Heath*, 316 N.C. 337, 340-43, 341 S.E.2d 565, 567-69 (1986).

The trial transcript, however, is devoid of any motion on the part of defendant to strike the objectionable answers given by Agent Worsham. By failing to move that the testimony be stricken, defendant has waived his right now to assert error on appeal.

N.C. Gen. Stat. §§ 8C-1, R. Evid. 103(a)(1) (1988), 15A-1446(b) (1988); N.C. R. App. P. 10(b)(1) (1990); 1 Brandis at § 27 (when inadmissibility indicated by some feature of answer, objection should be in form of motion to strike as soon as inadmissibility becomes known). We therefore overrule this assignment of error.

## IV

We find no error by the trial judge in permitting A.G. to testify about prior incidents of sexual abuse by defendant. Additionally, we hold that the judge did not err by overruling defendant's objection to the State's question to Agent Worsham and that defendant has waived his right to assign error to the objectionable portions of Agent Worsham's answers. We hold, consequently, that defendant is not entitled to a new trial.

No error.

Judges WELLS and PARKER concur.