TYSON, Judge.
Donte Maurice Santiago ("defendant") appeals from judgments entered after a jury found him to be guilty of first-degree murder of Fred Howell ("Howell"), second-degree kidnapping, conspiracy to commit robbery with a dangerous weapon, first-degree burglary, and assault by pointing a gun. We hold that defendant received a fair trial free from error.
I. Background
On 31 July 2001, shortly after midnight, defendant and three of his friends, Hasan Echols ("Echols"), Brandon Morton ("Morton"), and Edwin Pickett ("Pickett") decided to "go and rob someone for their marijuana or money or whatever we could get from them." Pickett testified that upon arriving at a parking lot, he hadreservations because the neighborhood was located in a low-income housing development called Brandywood Apartments. He "didn't figure they had too much money . . . so [he] was kind of second guessing it." Pickett also testified that defendant "told us they had piles of marijuana in the house" and "convinced us" to continue with the plan. Defendant and Pickett possessed . 22 caliber pistols, and Morton was armed with a twelve gauge shotgun. Defendant, Echols, and Morton entered the apartment, while Pickett remained outside of the apartment to urinate.
Phillip Styles ("Styles") testified he lived in Brandywood and was talking on the telephone to his girlfriend on the sidewalk outside of his apartment. Defendant approached Styles and asked where he could find Livingston Mitchell ("Mitchell"), who was Styles's brother. Styles informed defendant that Mitchell was "in the house," and asked, "what's your name?" Defendant responded, "Tae." Styles "put two and two together, put his face and name together," and knew "that's Donte."
As defendant and Styles approached the apartment, Styles felt something on the back of his head and heard defendant say, "give it up." Styles turned around and saw defendant brandishing a gun with a white handle, as well as another man with a shotgun. A "bigger dude" approached Styles and took his watch, cordless telephone, cellular phone, and pager. Styles only remembered seeing three people. Defendant ordered Styles to enter the apartment. Styles entered his apartment, went immediately back to his mother's room and closed the door. Styles told his mother, "[C]all the cops, I think somebody is in the house to rob us."
Mitchell, who was present in the living room with Howell, testified that he observed defendant and two other people enter his house. Mitchell grabbed his glasses, "balled up his fist[,] and put it up." One of the men struck him in the side of his face with the butt of the shotgun. Mitchell fell onto the floor beside the couch.
After hearing some glass break, Styles looked outside the door to his mother's room, observed his brother Mitchell drop to the floor, and closed the door. Styles called some friends for assistance and then called the police. Defendant kicked in the door to Styles's mother's room and pointed the gun towards Styles and his mother. Defendant asked Styles if he was calling the police, and Styles hung up the telephone. Styles moved in front of his mother, and defendant exited the room. Styles followed defendant out of the room and towards the front door. Styles testified, "[B]efore [defendant] was leaving out the door, he turned around and shot Fred [Howell] in the chest, [and] just walked out of the house." Styles observed Howell slide out of the seat "real slow" and fall to the floor. Police arrived at Styles's apartment shortly thereafter.
Pickett testified that after he finished urinating, he entered the apartment. Echols and Morton were standing in the living room near the door. After closing the door, Pickett observed a bodylying on the floor and saw another person's legs. The couch blocked Pickett's view of the rest of the body. After defendant walked towards the back of the apartment and kicked open a door, Pickett heard a woman scream. When defendant began talking to Styles inside the house, Pickett "realized [it was] time for me to leave." He opened the door and ran towards the vehicle. Echols and Morton followed Pickett back to the vehicle.
On their way back to the vehicle, Pickett heard a single shot. Defendant emerged from the apartment and informed Pickett that he shot "Fred, the guy that was on the couch." The men then "took the guns . . . to a friend's house and hid them . . . ." This house was identified as the residence of Jermaine Gillard ("Gillard") and Lavar Drummond ("Drummond"). Gillard overheard one of the men tell defendant that "you should have never shot him." Defendant responded, "he shouldn't have had a beef." Gillard testified that "beef" meant a "problem."
Drummond later turned one revolver over to the Jacksonville Police Department. Jacksonville Police Officer Clifton McQueen ("Officer McQueen") later recovered another weapon. Officer McQueen also testified that while serving as a School Resource Officer at Jacksonville High School, he observed Howell and defendant during "an altercation" where they were verbally insulting one another.
An autopsy of Howell revealed a chest wound caused by a .22 caliber bullet, which was recovered from the body. Medicalexaminer Dr. Charles Garrett testified Howell bled to death from the gunshot wound.
The jury convicted defendant of first-degree murder on the basis of malice, premeditation, and deliberation and on the basis that the murder occurred during the perpetration of a felony. The jury also convicted defendant of second-degree kidnapping, conspiracy to commit robbery with a dangerous weapon, first-degree burglary, and assault by pointing a gun. Defendant appeals.
II. Issues
The issues on appeal are whether the trial court erred by: (1) denying defendant's request to instruct the jury on second-degree murder; (2) denying defendant's motion to dismiss the charges of felony murder and second-degree kidnapping; (3) entering judgment and imposing consecutive sentences for both second-degree kidnapping and first-degree burglary because these offenses were used to establish the offense of felony murder; (4) allowing testimony that Gillard overheard an unknown man tell defendant, "you should have never shot him;" (5) denying defendant's request to instruct the jury regarding the testimony of a witness who testifies pursuant to a plea agreement with the State; (6) allowing testimony that defendant and Howell had engaged in an altercation at Jacksonville High School; and (7) denying defendant's motion to dismiss because the short-form indictment insufficiently informed him of the charges.
III. Second-Degree Murder
Defendant argues the trial court erred by failing to instruct the jury on the lesser-included offense of second-degree murder. We disagree.
First-degree murder is "the intentional and unlawful killing of a human being with malice and with premeditation and deliberation;" and second-degree murder is defined as "the unlawful killing of a human being with malice, but without premeditation and deliberation." State v. King, 353 N.C. 457, 484, 546 S.E.2d 575, 595 (2001) (citations and quotations omitted), cert. denied, 534 U.S. 1147, 151 L. Ed. 2d 1002, reh'g denied, 535 U.S. 1030, 152 L. Ed. 2d 646 (2002).
Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation. Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation.
State v. Bullock, 326 N.C. 253, 257, 388 S.E.2d 81, 83 (1990) (citations omitted). Circumstances that may be considered in determining whether a defendant acted with premeditation and deliberation include:
(1) want of provocation on the part of the deceased; (2) the conduct and statements of defendant before and after the killing; (3) threats and declarations of defendant before and during the course of the occurrence giving rise to the death of the deceased; (4) ill-will or previous difficulty between the parties; (5) the dealing of lethal blows after the deceased has been felled and renderedhelpless; and (6) evidence that the killing was done in a brutal manner.
Id. at 258, 388 S.E.2d at 84 (quoting State v. Jackson, 317 N.C. 1, 23, 343 S.E.2d 814, 827 (1986), judgment vacated, 479 U.S. 1077, 94 L. Ed. 2d 133 (1987)).
The trial court must instruct on the lesser-included offense if "the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." King, 353 N.C. at 484, 546 S.E.2d at 595 (quoting State v. Leazer, 353 N.C. 234, 237, 539 S.E.2d 922, 924 (2000) (quoting Keeble v. United States, 412 U.S. 205, 208, 36 L. Ed. 2d 844, 847 (1973))). In determining whether a defendant charged with first-degree murder is entitled to an instruction on second-degree murder:
The determinative factor is what the State's evidence tends to prove. If the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree, including premeditation and deliberation, and there is no evidence to negate these elements other than defendant's denial that he committed the offense, the trial judge should properly exclude from jury consideration the possibility of a conviction of second[-]degree murder.
King, 353 N.C. at 484, 546 S.E.2d at 595 (quoting State v. Gary, 348 N.C. 510, 524, 501 S.E.2d 57, 66-67 (1998) (quoting State v. Strickland, 307 N.C. 274, 293, 298 S.E.2d 645, 658 (1983), overruled in part on other grounds by State v. Johnson, 317 N.C. 193, 344 S.E.2d 775 (1986))). "[M]ere speculation is not sufficient to negate evidence of premeditation and deliberation." King, 353 N.C. at 485, 546 S.E.2d at 596 (quoting Gary, 348 N.C. at 524, 501 S.E.2d at 67).
Defendant does not argue that the State failed to present evidence of premeditation and deliberation, but asserts conflicting evidence was presented regarding the existence of premeditation and deliberation, which required an instruction on second-degree murder. His brief concedes no evidence was presented that Howell provoked defendant. Immediately following the murder, defendant admitted to shooting Howell. Evidence was also presented to show defendant and Howell had been involved in an altercation at school and had previously fought with each other at a Pizza Hut in October 2000.
On appeal, defendant has failed to point to any conflicting evidence in the record to negate the State's evidence showing "want of provocation" by the victim, "statements of defendant . . . after the killing," and "ill-will . . . between the parties." Bullock, 326 N.C. at 258, 388 S.E.2d at 84. The trial court did not err by failing to instruct the jury on the offense of second-degree murder. This assignment of error is overruled.
IV. Motion to Dismiss
Defendant argues the State presented insufficient evidence to support a conviction of second-degree kidnapping. He asserts the trial court also erred in failing to dismiss the charge of felony murder on the basis of second-degree kidnapping. We disagree.
In ruling on a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State andgive the State every reasonable inference to be drawn from the facts and evidence presented. State v. Lee, 348 N.C. 474, 488, 501 S.E.2d 334, 343 (1998). We uphold a trial court's ruling on a motion to dismiss if the State presents substantial evidence: "(1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense." State v. Fritsch, 351 N.C. 373, 378, 526 S.E.2d 451, 455, cert. denied, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). "Substantial evidence is . . . relevant evidence which a reasonable mind could accept as adequate to support a conclusion." Lee, 348 N.C. at 488, 501 S.E.2d at 343. "[T]he evidence need only give rise to a reasonable inference of guilt for the case to be properly submitted to the jury." State v. Barnett, 141 N.C. App. 378, 383, 540 S.E.2d 423, 427 (2000), aff'd, 354 N.C. 350, 554 S.E.2d 644 (2001).
In order to establish the offense of kidnapping, the State must offer proof of an unlawful, nonconsensual restraint, confinement or removal of a person from one place to another, for the purpose of: (1) holding the person for ransom, as a hostage or using them as a shield; (2) facilitating flight from or the commission of any felony; or (3) terrorizing or doing serious bodily harm to the person.
State v. Smith, 160 N.C. App. 107, 119, 584 S.E.2d 830, 838 (2003); N.C. Gen. Stat. § 14-39(a) (2003). Our Supreme Court has interpreted the phrase "removal from one place to another" to require a removal separate and apart from that which is an inherent, inevitable part of the commission of another felony. To permit separate and additional punishment where there has been only a technical asportation, inherent in the other offense perpetrated, would violate a defendant's constitutional protection against double jeopardy. In an armed robbery, for example, punishment for two offenses would be sanctioned if the victim was forced to walk a short distance towards the cash register or to move away from it to allow defendant access. Under such circumstances the victim is not exposed to greater danger than that inherent in the armed robbery itself, nor is he subjected to the kind of danger and abuse the kidnapping statute was designed to prevent.
State v. Irwin, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981) (citation omitted). "'The key question . . . is whether the kidnapping charge is supported by evidence from which a jury could reasonably find that the necessary restraint for kidnapping "exposed [the victim] to greater danger than that inherent in the armed robbery itself."'" State v. Beatty, 347 N.C. 555, 559, 495 S.E.2d 367, 369-70 (1998) (alteration in original) (quoting State v. Pigott, 331 N.C. 199, 210, 415 S.E.2d 555, 561 (1992) (quoting Irwin, 304 N.C. at 103, 282 S.E.2d at 446)). "The additional restraint may consist of actions that increase the victim's helplessness and vulnerability." State v. Prevatte, 356 N.C. 178, 252, 570 S.E.2d 440, 481 (2002) (citation omitted), cert. denied, 538 U.S. 986, 155 L. Ed. 2d 681 (2003); see also Beatty, 347 N.C. at 559, 495 S.E.2d at 369-70.
Taken in the light most favorable to the State, the evidence tended to show defendant pointed a gun at Styles on two occasions. Upon arrival at the Brandywood Apartment complex, defendant spokewith Styles. As the two men were walking towards Styles's apartment, defendant brandished a gun, while another man stole Styles's watch and his cellular phone. Styles testified that after he was robbed, defendant "pointed, you know what I'm saying, did like this and told me to go into the house . . . ." Styles entered the house, walked to the back room where his mother was located, and shut the door.
While Styles was on the telephone in the room with his mother, defendant "kicked open the door" and pointed the gun towards Styles for a second time. Defendant admonished Styles for making a telephone call, warned him against calling the police, and pointed the weapon towards Styles's mother. Styles testified he was "scared to death."
Based on Styles's testimony, the jury could reasonably infer that after Styles was robbed of his watch and cellular phone, he was exposed to a "greater danger than that inherent in the armed robbery itself." Beatty, 347 N.C. at 559, 495 S.E.2d at 369-70 (quotations omitted). The evidence tended to show defendant additionally restrained Styles once he was inside the house and subjected him to additional "helplessness and vulnerability." Prevatte, 356 N.C. at 252, 570 S.E.2d at 481. Styles's credibility was an issue for the jury to determine. See State v. O'Rourke, 114 N.C. App. 435, 441, 442 S.E.2d 137, 140 (1994) (in ruling on a motion to dismiss, the "credibility of the witnesses and the weight to be given their testimony is for the jury to determine"). The trial court did not err in denying defendant's motion to dismissthe charge of second-degree kidnapping or felony murder based on that offense. This assignment of error is overruled.
V. Sentencing for Felony Murder
Defendant contends the trial court erred by entering judgment and imposing consecutive sentences for both second-degree kidnapping and first-degree burglary because these offenses were used to establish the elements of felony murder. We disagree.
Our Supreme Court has stated
when the sole theory of first-degree murder is the felony murder rule, a defendant cannot be sentenced on the underlying felony in addition to the sentence for first-degree murder, State v. Small, 293 N.C. 646, 660, 239 S.E.2d 429, 438-39 (1977). On the other hand, where a defendant's conviction of first-degree murder is based on both the felony murder rule and premeditation and deliberation, the defendant may be sentenced both for the first-degree murder conviction and for the underlying felony. State v. Lewis, 321 N.C. 42, 50, 361 S.E.2d 728, 733 (1987).
State v. Wilson, 345 N.C. 119, 122, 478 S.E.2d 507, 510 (1996).
Here, the jury found defendant to be guilty of "first[-]degree murder on the basis of malice, premeditation, and deliberation and in the perpetration of a felony." We have already held the evidence supports a conviction of murder on the basis of premeditation and deliberation. The trial court did not err in sentencing defendant according to his conviction of first-degree murder, second-degree kidnapping, and first-degree burglary. This assignment of error is overruled.
VI. Hearsay
Defendant contends the trial court erred by allowing into evidence hearsay evidence regarding statements made between an unidentified declarant and defendant following the murder. We disagree.
Gillard testified that he overheard an unidentified declarant tell defendant "you should have never shot him," and that defendant responded, "he shouldn't have had a beef." Jacksonville Police Department Detective David Kaderbek ("Detective Kaderbek") testified that Gillard relayed these statements to investigating officers. Defendant concedes Detective Kaderbek's testimony was admissible as corroborating evidence should this Court find no error in Gillard's testimony. "Corroborative evidence is admissible as such notwithstanding the fact that it would otherwise be incompetent." State v. Riddle, 316 N.C. 152, 159, 340 S.E.2d 75, 79 (1986) (citations omitted). Our review is whether the statements overheard by Gillard, which were admitted at trial, constitute hearsay.
"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2003). Hearsay evidence is inadmissible at trial unless it falls into a statutorily-recognized exception. N.C. Gen. Stat. § 8C-1, Rule 802 (2003). The two statements overheard by Gillard and admitted through his testimony must each fall into a separate exception or have been considered by the jury for a non-hearsay use. Defendant contends the statement, "You should never have shot him," was hearsay. Defendant objected at trial. The State told the trial court the statement was not offered for the truth of the matter asserted, but to "explain defendant's response." The trial court overruled defendant's objection and permitted the testimony.
"Out-of-court statements that are offered for purposes other than to prove the truth of the matter asserted are not considered hearsay. Specifically, statements are not hearsay if they are made to explain the subsequent conduct of the person to whom the statement was directed." State v. Gainey, 355 N.C. 73, 87, 558 S.E.2d 463, 473 (citations omitted), cert. denied, 537 U.S. 896, 154 L. Ed. 2d 165 (2002).
Rule 801(d) provides an exception for admissions of a party and permits the admission of a statement "offered against a party and it is . . . his own statement, . . . or . . . a statement of which he has manifested his adoption or belief in its truth . . . ." N.C. Gen. Stat. § 8C-1, Rule 801(d)(A)-(B) (2003). "'An admission is a statement of pertinent facts which, in light of other evidence, is incriminating.'" State v. Lambert, 341 N.C. 36, 50, 460 S.E.2d 123, 131 (1995) (quoting State v. Trexler, 316 N.C. 528, 531, 342 S.E.2d 878, 879-80 (1986)). "Adoptive admissions generally fall into one of two categories: (1) those adopted through an affirmative act of a party; and (2) those inferred from silence or a failure to respond in circumstances that call for a response." State v. Weaver, 160 N.C. App. 61, 65, 584 S.E.2d 345,347 (2003) (citing State v. Sibley, 140 N.C. App. 584, 588-89, 537 S.E.2d 835, 839 (2000)).
In Weaver, "the State offered evidence that defendant participated in the conversation and affirmatively endorsed [the declarant's] statements." 160 N.C. App. at 65, 584 S.E.2d at 347. We ruled the declarant's statements were admissible because the defendant agreed to the statements, saying, "That's right," and "Whatever he wants, we can do it." Id. at 66, 584 S.E.2d at 347. We held the defendant's subsequent actions and statements constituted adoptive admissions, an exception to the rule barring hearsay testimony. Id.
Here, defendant's subsequent statement constitutes an adoptive admission to the statement, "You should have never shot him." See id. The trial court did not err by allowing Gillard or Detective Kaderbek to testify regarding these statements. This assignment of error is overruled.
VII. Jury Instructions on Plea Agreement
Defendant contends the trial court erred by failing to instruct the jury on testimony of a witness under an agreement with the prosecutor for a charge reduction in exchange for his testimony. We disagree.
A trial court must instruct the jury on grants of immunity only when the evidence supports the instruction. State v. Bare, 309 N.C. 122, 127, 305 S.E.2d 513, 517 (1983) ("It is only those special instructions which are supported by the evidence that must be given to the jury.") (citing State v. Bock, 288 N.C. 145,158-59, 217 S.E.2d 513, 522 (1975)). In Bare, the witness testified that he had never been promised anything in exchange for his testimony at trial. 309 N.C. at 127-28, 305 S.E.2d at 517. The Supreme Court ruled the fact that the witness could have been charged and indicted for murder on the facts of his own testimony, but was not so charged and indicted, was insufficient to require the trial court to instruct the jury regarding a grant of immunity. Id. at 128, 305 S.E.2d at 517. Further, the Supreme Court held the trial court correctly "gave the jury an extensive instruction on evaluating the credibility of interested witnesses and in so doing referred to [the witness] specifically . . . ." Id.
Pickett testified he received no promises in return for pleading guilty and there were no arrangements with the State to help him in exchange for his testifying against defendant. Pickett's lawyer, Stuart Popkin ("Popkin"), also testified on voir dire that there was no agreement to reduce Pickett's sentence. Popkin informed the trial court that Pickett was charged with conspiracy to commit armed robbery and informed his attorney that he wanted to cooperate. Popkin obtained his client's statement and provided it to law enforcement. Pickett subsequently pled guilty to the charge of conspiracy to commit armed robbery, but had not been sentenced prior to testifying at defendant's trial.
Defense counsel cross-examined Pickett regarding his motives for testifying and any benefits he would gain by testifying. Specifically, Pickett denied entering into "arrangements" with the State and testified, "I did that to help my soul, to help me go toheaven." Pickett testified that he went to Popkin and "asked him could I plead. He never tried to convince me to plead or coerce me to plead." During cross-examination, Pickett admitted he had not been charged with accessory after the fact to first-degree murder or first-degree burglary.
The trial court determined no evidence showed the State offered Pickett any leniency for his testimony. This conclusion is supported by the record and our Supreme Court's holding in Bare. Id. The trial court instructed the jury regarding its duty to determine the credibility of the witnesses and its ability to consider "an interest, bias, or partiality the witness may have . . . ." This assignment of error is overruled.
VIII. Prior Altercations Between Defendant and Victim
Defendant contends the trial court erred by allowing Officer McQueen to testify regarding a prior altercation between defendant and Howell. We disagree.
Officer McQueen testified that in August 2000, he witnessed an altercation between defendant and Howell at Jacksonville High School. According to Officer McQueen, defendant and Howell were "rapping" and insulting one another. Defendant argues this testimony regarding a prior bad act was inadmissible under Rule 404(b) of the North Carolina Rules of Evidence.
Rule 404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes such as proof of motive, opportunity, intent, preparation,plan, knowledge, identity, or absence of mistake, entrapment or accident.
N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003). "Rule 404(b) is one of 'inclusion of relevant evidence of other crimes . . . subject to but one exception requiring its exclusion if its only probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged.'" State v. Faircloth, 99 N.C. App. 685, 689, 394 S.E.2d 198, 201 (1990) (quoting State v. Coffey, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990)).
In determining the admissibility of prior bad acts under Rule 404(b), the trial court must decide: (1) whether "the evidence is of the type and offered for a proper purpose under the rule" other than to show the defendant's propensity to commit the crime; (2) whether the evidence is relevant; and (3) whether the probative value is substantially outweighed by the prejudicial effect. State v. Bynum, 111 N.C. App. 845, 848-49, 433 S.E.2d 778, 780 (citing State v. Morgan, 315 N.C. 626, 640, 340 S.E.2d 84, 91 (1986); State v. Cummings, 326 N.C. 298, 398 S.E.2d 66 (1990)), disc. rev. denied, 335 N.C. 239, 439 S.E.2d 153 (1993).
Defendant asserts evidence regarding the prior altercation between defendant and Howell "had no tendency to show malice or ill-will" towards the victim. We disagree. Defendant's prior altercation with the man he later shot could be indicative of his motive and ill-will, which is admissible evidence under Rule 404(b). Defendant does not argue the evidence was irrelevant. We are not persuaded the trial court abused its discretion inbalancing the probative value with the prejudicial effect. The trial court did not err in admitting evidence of a prior altercation between defendant and the victim. This assignment of error is overruled.
IX. Short-Form Indictment
Defendant argues the short-form indictment was insufficient to charge any theory of first-degree murder. Defendant concedes our Supreme Court "has consistently and unequivocally upheld the short-form murder indictments as valid under both the United States and the North Carolina Constitutions." State v. Hunt, 357 N.C. 257, 274, 582 S.E.2d 593, 604 (citations omitted), cert. denied, 539 U.S. 985, 156 L. Ed. 2d 702 (2003). Defendant's assignment of error is without merit and is dismissed.
X. Conclusion
The trial court did not err in denying defendant's requested instruction on second-degree murder. Defendant has not identified any evidence that negates the elements of premeditation and deliberation. The trial court also did not err by: (1) denying defendant's motion to dismiss the charge of second-degree kidnapping and felony murder; (2) entering judgment and imposing sentences for both second-degree kidnapping and first-degree burglary, as defendant was also found to be guilty of murder in the first-degree on the basis of malice, premeditation, and deliberation; (3) admitting testimony by an unknown declarant that was an adoptive admission by defendant; (4) failing to instruct the jury regarding a witness who testified pursuant to a plea agreementwith the State; and (5) admitting testimony regarding a prior altercation between defendant and Howell, the decedent.
The short-form indictment sufficiently sets forth the charge for first-degree murder. We conclude defendant received a fair trial, free from the errors he assigned and argued.
No Error.
Judges BRYANT and LEVINSON concur.
Report per Rule 30(e).