STATE OF NORTH CAROLINA v. JOSEPH LEE PERRY

No. 61

(Filed 7 December 1976)

1. **Constitutional Law §§ 30, 33— assault — use of mask by assailant — requiring defendant to don mask at trial — no error**

In a prosecution for armed robbery and assault with a deadly weapon with intent to kill inflicting serious injury where the victim

State v. Perry

testified that her assailant wore an orange stocking over his head and face, the trial court's requirement that defendant place the stocking mask which had been introduced into evidence over his head and face and stand before the jury did not violate defendant's constitutional right against self-incrimination, nor did it violate the due process clause of the Fourteenth Amendment to the Constitution of the U. S. or the like provision of Article I, § 19 of the N. C. Constitution.

2. **Criminal Law §§ 34, 96— evidence of defendant's guilt of other offense — evidence withdrawn from jury's consideration — defendant not prejudiced**

   In a prosecution for armed robbery and assault with a deadly weapon with intent to kill inflicting serious injury, defendant was not prejudiced by the victim's statements on cross-examination that she had read nothing in the newspapers about this case but she had read something concerning a "shooting at Hardee's," a reference to a separate robbery for which defendant had already been tried and convicted, since the witness did not state what she had read about the shooting at Hardee's, and the trial court immediately instructed the jury not to consider the statement of the witness.

APPEAL by defendant from *Lee, J.,* at the 12 April 1976 Session of DURHAM.

By indictments, proper in form, the defendant was charged with armed robbery and with assault with a deadly weapon with intent to kill, inflicting serious injury not resulting in death. He was found guilty on both charges and sentenced to imprisonment for 20 years for the assault and imprisonment for life for the robbery, the latter sentence to commence upon the expiration of the former, which, in turn, is to commence upon the expiration of a previously imposed sentence for an unrelated crime. He did not testify but offered evidence sufficient, if true, to establish an alibi.

The evidence for the State was to the following effect:

On the evening of 5 November 1975, Mrs. Barbara Powell was working alone in the Kwik-Pik Store on North Duke Street in Durham, she being the only employee in the store, which was well lighted. Shortly after 11:30 p.m., while crouched down on the floor in performance of her duties, she heard someone enter the store. When she rose to her feet she was confronted with a man with a gun in his hand, wearing a blue jacket, a blue shirt over an orange T-shirt, blue pants, tan cloth gloves with blue trimming and tennis shoes, and having an orange stocking over his head and face. He had a small mustache. Due

to runs in the stocking, she could see his face without difficulty. In court, without objection, she positively identified the defendant as this man.

The intruder ordered Mrs. Powell to open the cash register, which she did, and he removed the money therefrom. He then demanded that she open the safe. She informed him, correctly, that she could not because opening the safe required the use of two keys, only one of which was on the premises. He then directed Mrs. Powell to get down on her knees in front of the safe, which she did. He picked up her pocketbook, saying, "I ought to shoot you," and calling her an ugly name. He then shot her in the chest and left the store, having been in it approximately ten minutes. Just before he shot her, she was face to face with him for three or four minutes with nothing to obscure her vision of him except the stocking over his head and face.

Upon the intruder's departure, Mrs. Powell called the police. She observed just outside the door the orange stocking mask. When the police arrived, an officer picked up the mask and Mrs. Powell identified it as the one worn by the intruder. She so identified it in court, saying that it was then in the same condition as when worn by the robber, except it was torn "a little bit more" in one place indicated by her.

Mrs. Powell gave the officers a detailed description of the robber, describing him as being about 6 feet in height, weighing about 180 pounds and clothed as above stated. Thereupon, she was taken to the hospital for treatment of her injury, which was severe and required hospitalization for approximately two weeks and substantial medical attention after her discharge from the hospital.

On the day before her discharge from the hospital, Detective Overby of the Durham Police Department requested Mrs. Powell to examine an album containing approximately 50 pictures of Negro males. She did so, but did not identify any of them as the picture of the robber. The defendant's picture was not contained in this album. Detective Overby then handed her another group of photographs, which she examined. She did not identify any of these as a photograph of the robber and the defendant's picture was not contained in that group. Detective Overby then handed her a third group of three photographs. One of these Mrs. Powell identified as that of a man who had

been in the store on another occasion but who was not the robber, and then she identified the third picture in this group as a picture of the man who had robbed and shot her. This was a photograph of the defendant. At no time did Detective Overby tell Mrs. Powell that a photograph of a suspect was included in any of the groups of photographs he requested her to examine.

The following day Detective Roop of the Durham Police Force showed Mrs. Powell six photographs, including the last three shown her by Detective Overby. Again, she picked the defendant's picture as that of the man who had robbed and shot her, and she again picked the photograph of the other man whom she had previously seen in the store but who was not the robber. These photographs of the defendant and the other man were introduced in evidence without objection.

Mrs. Powell further testified that she attended the preliminary hearing for the defendant in the District Court and there saw and recognized him. The defendant at that time also recognized Mrs. Powell and smirked at her. At no time had her picture appeared in any newspaper.

Mrs. Powell further testified that she is absolutely certain that if she had not been shown the photograph she could, nevertheless, have identified the defendant in court.

On cross-examination the following dialogue occurred:

"MR. BIRCHER: (Defendant's counsel): Mrs. Powell, after the robbery had you read anything in the newspaper about this case?

MRS. POWELL: No sir.

MR. BIRCHER: Nothing whatsoever?

MRS. POWELL: I was in the hospital for a while.

MR. BIRCHER: After you got out did you read anything about it?

MRS. POWELL: About the shooting at Hardee's I did.

DEFENDANT MOVES TO STRIKE.

COURT: Members of the jury, don't consider that. Motion allowed."

Thereupon, in the absence of the jury, the defendant's counsel moved for a mistrial on the ground that the witness had

just mentioned "another armed robbery for which the defendant had already been tried and convicted and was sentenced to a hundred years which was reported on the front page of all the Durham newspapers, on all the radio and television, and that would highly prejudice the jury." This motion was denied. Thereupon, the jury returned to the courtroom and the court instructed the jury:

> "Members of the jury, don't consider the last statement the witness made in response to the Defendant's question about something that may have happened at Hardee's. Erase it from your mind and do not consider it. It has nothing to do with this case whatsoever."

Over objection, the court, upon motion of the District Attorney, directed the defendant to stand in front of the jury box and place the orange stocking mask over his head and face with a large hole therein being over the defendant's mouth, where Mrs. Powell testified this hole appeared when the stocking mask was worn at the time of the robbery by the man who robbed and shot her. Mrs. Powell testified that at the time of the trial the hole in the stocking mask was larger than it had been on the night of the robbery, the stocking being, otherwise, in the same condition.

The only assignments of error are to the overruling of the above mentioned motion for mistrial and to the action of the court in requiring the defendant to place over his head and face the orange stocking mask and to stand before the jury while so wearing it.

*Rufus L. Edmisten, Attorney General, by Joan H. Byers, Assistant Attorney General, and Jack Cozort, Associate Attorney, for the State.*

*Richard Bircher for defendant.*

LAKE, Justice.

[1] There was no error in requiring the defendant to stand before the jury and place the orange stocking mask over his head and face in the way Mrs. Powell had testified it was worn by the man who robbed and shot her. By cross-examination of Mrs. Powell, the defendant had attempted to cast doubt upon her ability to identify the defendant as the robber so masked. The court thus permitted the jury to see the defendant as Mrs.

State v. Perry

Powell had testified she saw the robber. Obviously, the experiment convinced the jury that the mask was not sufficient to obscure the features of the robber so as to prevent subsequent identification.

The defendant concedes that *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed. 2d 908 (1966), leads to the conclusion that this action of the court did not violate the defendant's constitutional protection against self-incrimination. He contends that it violates the due process clause of the Fourteenth Amendment. We find no merit in this contention.

In the Schmerber case, the defendant was charged with driving an automobile under the influence of intoxicating liquor and, over his objection, a sample of his blood was extracted by a physician, in a medically proper manner, and the analysis thereof was admitted in evidence to show his intoxication. The defendant contended that the admission of this evidence violated the due process clause of the Fourteenth Amendment, the search and seizure clause of the Fourth Amendment and his privilege against self-incrimination under the Fifth Amendment. The Supreme Court of the United States held that all of these contentions were without merit, saying that the withdrawal of the blood and the use of the analysis thereof in evidence did not offend that "sense of justice" of which the Court spoke in *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). It, therefore, rejected Schmerber's due process argument.

As to the privilege against self-incrimination, the Court said, in the Schmerber case, "We hold that the privilege protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." It then said, "[B]oth federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture."

In *Holt v. United States,* 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910), the Supreme Court of the United States, speaking through Mr. Justice Holmes, said:

"A question arose as to whether a blouse belonged to the prisoner. A witness testified that the prisoner put it on

and it fitted him. It is objected that he did this under the same duress that made his statements inadmissible, and that it should be excluded for the same reasons. But the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of psysical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material. The objection in principle would forbid a jury to look at a prisoner and compare his features with a photograph in proof."

In *United States v. Turner*, 472 F. 2d 958 (4th Cir. 1973), a defendant charged with bank robbery, which robbery had been photographed while in progress, was required to put on a wig and sun glasses, said to be "similar" to the wig and sun glasses worn by the robber, so that the jury could compare the defendant's appearance with the photographs of the robber. The Court of Appeals held that this action of the trial court did not violate the defendant's right against self-incrimination, the evidence being real or physical, not testimonial or communicative.

In *United States v. Roberts*, 481 F. 2d 892 (5th Cir. 1973), the defendant, charged with a bank robbery, in which one of the participants was wearing a stocking mask over his face, was required by the trial court to place over his face the stocking mask worn during the robbery so as to give a witness an opportunity to testify as to the similarity of his appearance in this condition to the appearance of the masked robber. The Court of Appeals held that in this there was no error, saying that the privilege against self-incrimination afforded by the Fifth Amendment of the Constitution of the United States and made applicable to the states by the Fourteenth Amendment, offers no protection against compulsion to put on an item of apparel worn by the person committing the offense in order to facilitate identification.

In *United States v. Murray*, 523 F. 2d 489 (8th Cir. 1975), the defendant was charged with a bank robbery, which robbery was photographed while in progress, and was required to wear before the jury a wig "similar" in style to one in his possession at the time of his arrest and similar to the hair style of a co-defendant at the time of the robbery. The Court of Appeals said, "The trial court properly required the defendant to place the wig on his head to assist the jury in determining whether he

was in fact the person who had been photographed participating in the robbery."

In *LaBlanc v. People,* 160 Colo. 575, 418 P. 2d 888 (1966), the defendant was convicted of burglary and rape. He contended that he was entitled to a new trial because the trial court had required him to put on clothing, found in his car and similar to the description given by the prosecuting witness of the clothing of her assailant, and exhibit himself therein to the jury. The Court held that in this there was no error since "it gave the jury an opportunity to see him as the victim saw him, and had a bearing on the accuracy of his identification."

In 8 Wigmore on Evidence (McNaughton Rev.), § 2265, it is said that the privilege against self-incrimination is not violated by "removing from or placing on a suspect shoes or head coverings or other clothing" or by "requiring a suspect to appear in court, stand, assume a stance, walk or make a particular gesture."

In *State v. Rogers,* 233 N.C. 390, 64 S.E. 2d 572, 28 A.L.R. 2d 1104 (1951), this Court found no error in the admission of testimony of a police officer to the effect that the bare footprint of the defendant taken by the officers was identical with a bloody footprint found at the scene of the crime, the court saying through Justice Ervin, "These [cited] North Carolina cases are in accord with well considered decisions in other jurisdictions to the effect that the constitutional privilege against self-incrimination is not violated by the introduction of evidence of fingerprints to identify the accused, even where the fingerprints of the accused are obtained by coercion."

Thus, the defendant's concession in the present case that to require him to place the stocking mask upon his head and face in the presence of the jury did not violate his constitutional right against self-incrimination was well advised. It is likewise clear that this action of the trial court did not violate the due process clause of the Fourteenth Amendment to the Constitution of the United States or the like provision in Article I, § 19, of the Constitution of North Carolina. See *Schmerber v. California, supra.* Nothing in this action offends the "sense of justice." The whole purpose of the experiment was not to identify the defendant as the perpetrator of the crimes charged, but to enable the jury to determine the correctness of his contention that the wearing of this mask by the perpetrator of

the offenses made it impossible for Mrs. Powell to see his features clearly enough to enable her to identify him thereafter. The jury was fully advised as to the nature and extent of the change which had occurred in the condition of the mask since it was worn by the robber. There is no merit in this contention of the defendant.

**[2]** There is likewise no merit in the contention of the defendant that a mistrial should have been ordered by reason of the statement of Mrs. Powell that she had read something in the newspaper concerning a "shooting at Hardee's." This statement was elicited on cross-examination of this witness by the defendant, in which he persisted after the witness had testified that she had read nothing in the newspaper "about this case." The witness did not state what she had read about "the shooting at Hardee's." The trial court immediately instructed the jury not to consider this statement of the witness and instructed the jury that it had "nothing to do with this case whatsoever."

In *State v. McVay* and *State v. Simmons*, 279 N.C. 428, 432, 183 S.E. 2d 652 (1971), we said that the allowance or refusal of a motion for mistrial in a criminal case less than capital rests largely in the discretion of the trial court. In *State v. Jarrette*, 284 N.C. 625, 646, 202 S.E. 2d 721 (1974), we held there was no error in the denial of a motion for mistrial due to testimony of a State's witness on direct examination which was not responsive to the question propounded by the prosecuting attorney, the statement inferring that the defendant had committed some criminal offense other than that for which he was on trial. We there said: "Immediately, upon motion of the defendant's counsel, the court properly instructed the jury not to consider this statement. We find in this circumstance no ground for a mistrial."

Similarly, in *State v. Self*, 280 N.C. 665, 671, 187 S.E. 2d 93 (1972), we said there was no error in the denial of the defendant's motion for mistrial by reason of an allegedly improper question propounded by the prosecuting attorney to the State's witness, which question the defendant contended inferred the commission by the defendant of a criminal offense other than that for which he was on trial. We there said: "We hold, however, that the court's prompt action in sustaining defendant's objection to the question and in excusing the jury and instructing the solicitor not to ask further questions along that line,

coupled with the court's specific instruction to the jury not to consider the question but to strike it from their mind, was sufficient to remove any possibility of error."

In the present case, the court's instruction to the jury was ample to remove from the jury's consideration any prejudicial inference which might be drawn from the unresponsive answer of the witness to the question propounded by the defendant's counsel.

No error.