STATE OF NORTH CAROLINA v. TIMOTHY SCOTT BRIDGES

No. 9126SC657

(Filed 20 October 1992)

1. **Evidence and Witnesses § 2201 (NCI4th) — rape and assault — hair found at scene — statistical probability of matching samples — not prejudicial**

 There was no prejudicial error in a prosecution for rape and assault where the court allowed an expert in hair com-

parison to testify to the statistical probability of another person's hair being indistinguishable from defendant's hair and that it was likely that unknown hairs found at the crime scene originated from defendant. The expert gave essentially the same testimony as in *State v. Suddreth*, 105 N.C. App. 122, and the testimony did not constitute an improper identification of defendant. Although the expert by his own admission merely offered an estimate as to the probabilities of a random hair match and the trial court erred by admitting the statistical probability testimony, defendant failed to demonstrate prejudicial effect.

**Am Jur 2d, Expert and Opinion Evidence § 301.**

**Admissibility and weight, in criminal case, of expert or scientific evidence respecting characteristics and identification of human hair. 23 ALR4th 1199.**

2. **Criminal Law § 463 (NCI4th)— rape and assault—closing argument—bloody palm print—no error**

The trial court did not err in a rape and assault prosecution by permitting the prosecutor to argue that a bloody palm print found on the wall of the crime scene belonged to the victim's daughter-in-law even though the State could not prove that the print belonged to her. The prosecutor did not exceed the limits of the evidence, but concentrated on one aspect of the expert's testimony rather than another.

**Am Jur 2d, Trial § 533.**

3. **Criminal Law § 687 (NCI4th) — rape and assault—instructions— hair sample analysis—requested instruction given in part—no error**

The trial court did not err in a rape and assault prosecution by giving only the first sentence of defendant's requested instruction on hair sample analysis, deleting the second sentence, and adding a cautionary instruction.

**Am Jur 2d, Trial §§ 1092, 1093.**

Judge GREENE dissenting.

APPEAL by defendant from judgments entered 2 February 1991 by *Judge Robert P. Johnston* in MECKLENBURG County Superior Court. Heard in the Court of Appeals 7 April 1992.

STATE v. BRIDGES

[107 N.C. App. 668 (1992)]

*Attorney General Lacy H. Thornburg, by G. Lawrence Reeves, Jr., for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defenders Marc D. Towler and Grady Jessup, for defendant appellant.*

COZORT, Judge.

On 16 April 1990 defendant was charged with first-degree rape, assault with a deadly weapon with intent to kill inflicting serious injury on a handicapped person, and felonious breaking or entering. Upon a jury verdict of guilty on all three counts, the trial court imposed a life sentence for the first two consolidated charges and a ten-year consecutive sentence for the third charge. Defendant appeals. We find no error.

The State presented evidence that an eighty-three-year-old wheelchair-bound woman was beaten and raped in her home in Charlotte on the evening of 14 May 1989. The next day, the victim's daughter-in-law discovered the victim and called the victim's grandson's wife, Roxie. Roxie went to the victim's apartment, found her lying in bed, and telephoned the police. The victim had been severely beaten and despite her denial, a physician concluded that the victim had been raped. On several occasions the victim described her assailant as having shoulder-length wavy blonde hair. At least two other times, she described him as having brown hair. Sometimes the victim described the assailant as being tall, and other times she described him as being short. Defendant had shoulder-length blonde wavy hair. Three witnesses testified that defendant told them he had committed the attack and rape. In investigating the scene, a technician found a bloody palm print located on a wall in the back of the bedroom adjacent to a light switch. The technician also collected hair samples. The victim and her daughter-in-law both died before trial.

Defendant raises three issues on appeal: (1) whether the trial court erred in permitting an expert in trace evidence examination to testify to the statistical probability of one hair sample matching another, (2) whether the trial court erred in permitting the prosecutor to argue that the bloody palm print found on the wall of the crime scene belonged to the victim's daughter-in-law, and (3) whether the trial court erred in refusing to give the defendant's requested jury instruction on hair comparison.

[1] In his first assignment of error, defendant argues that the trial court erred in permitting the State's expert in hair comparison to testify to the statistical probability of another person's hair being indistinguishable from defendant's hair and that it was "likely" that the unknown hairs found at the crime scene originated from the defendant. Mr. Elinos Whitlock III first explained in general the methodology of analyzing hair samples. He stated that "it is possible for two individuals to have hairs which are consistent with each other; that hair is not as unique and identifying as a fingerprint." He further testified that he was familiar with two studies on hair comparison. The first study concluded that there is a 1 in 4,500 chance of unknown hair matching a random individual from the Caucasian population. The study, however, had been criticized by other experts. The second study involved 100 individuals in which the testers removed 9 or 10 hairs from each of the individuals but could not find a match from the other individuals, thereby indicating a "very low chance" of unknown hair matching an individual at random. The expert stated he had examined between 2,000 and 3,000 hairs but that he had not conducted any statistical analysis. Based upon the two studies and his personal experience, the expert opined that the "likelihood of two Caucasian individuals having indistinguishable head hair, it is very low. A conservative *estimate* for that probability would be . . . approximately one in a thousand." (Emphasis added.)

Defendant argues that the expert's opinions were not supported by sufficient foundation and improperly suggested positive identification of the defendant as the perpetrator of the crime. We find no reversible error. Testimony by a properly qualified witness on hair identification and comparison is admissible if relevant, *State v. Green*, 305 N.C. 463, 290 S.E.2d 625 (1982), but may not be used to positively identify a defendant as the perpetrator of a crime. *State v. Stallings*, 77 N.C. App. 189, 191, 334 S.E.2d 485, 486 (1985), *disc. review denied*, 315 N.C. 596, 341 S.E.2d 36 (1986). In *State v. Suddreth*, 105 N.C. App. 122, 412 S.E.2d 126, *appeal dismissed*, 331 N.C. 281, 417 S.E.2d 68 (1992), this Court concluded that expert testimony on hair comparison did not constitute an improper identification of the defendant. Mr. Whitlock (the same expert who testified in the case at bar) testified that an unknown hair found on a paper towel found at the crime scene was consistent with a hair sample taken from the defendant. He defined the terms "consistent with" to mean that the hair "ex-

hibited all the same macroscopic and microscopic characteristics, and it is quite likely to have originated from Keith Suddreth." *Id.* at 131, 412 S.E.2d at 131. He further defined the terms "quite likely" to mean:

> Based on my experiences with hairs that I have examined, the characteristics I have seen in this hair it is certainly better than one out of a hundred, and my estimation is close to one out of a thousand. Meaning, if you pick an individual at random off the street, there is only one out of a thousand chance that the unknown hair would match or would also be consistent with that person's hair.

*Id.* at 132, 412 S.E.2d at 131. In addition, Mr. Whitlock testified that characteristics of head hair are not as unique as fingerprints and that he could not testify that a particular hair originated from a particular person. *Id.* at 133, 412 S.E.2d at 132. Consistent with Mr. Whitlock's testimony, the trial court instructed the jury that "comparative microscopy of hair is not accepted as reliable for positively identifying individuals and is not conclusive." *Id.*

In finding that the testimony did not rise to the level of a positive identification of the defendant, we reasoned that the expert's statement that "it [the hair] is quite likely to have been from [the defendant]," did not rule out the possibility that the hair originated from someone other than the defendant. We further reasoned that the statistical illustration was based on the expert's experience and expertise in the hair microscopy field and did not eliminate the possibility of sources of the hair other than defendant. *Id.* We found no error because "the expert did not venture beyond his area of expertise, the testimony did not constitute a positive identification, and the trial court's instructions prevented the jury from reaching a decision based solely on the hair analysis testimony." *Id.* In the case at bar, Mr. Whitlock gave essentially the same testimony as in *Suddreth.* Following the reasoning in *Suddreth,* we find the testimony did not constitute an improper identification of defendant.

*Suddreth* is not dispositive of defendant's argument that the State failed to lay a sufficient foundation for Mr. Whitlock's testimony. Defendant did not raise the foundation issue in *Suddreth,* and our opinion there does not address the sufficiency of the foundation for the expert testimony. Defendant relies heavily upon *United States v. Massey,* 594 F.2d 676 (8th Cir. 1979) to

support his argument. In *Massey*, an expert in microscopic analysis testified that three of the five hairs found in a blue ski mask allegedly used in a bank robbery matched a hair sample taken from defendant's head. In response to the trial court's query as to the likelihood of the defendant's hair matching another individual's hair, the expert stated that he could identify the race of the hair source, but could not identify one individual to the exclusion of others. After the expert stated that he had examined in excess of 2,000 hairs and only found indistinguishable hair from two individuals on a couple of occasions, the trial court asked: "Two chances—one chance in a thousand?" The expert responded, "Well, that's very difficult—you're putting it in probabilities—because I do not take a hair from each case and compare it with hair from all other cases. But that's the frequency with which I have seen it." *Id.* at 679. The expert also referred to a Canadian study indicating a 1 in 4,500 chance that one hair taken from one individual could match the hair taken from another individual of the same race.

The United States Court of Appeals for the Eighth Circuit found there was "no foundation to show the factual circumstances surrounding each of [the expert's] examinations and certainly there is no statistical probability which could be drawn from his experience to show that there was only 'one chance in a 1,000' that hair comparisons could be in error." *Id.* at 680. The court further found there was no foundation for testimony regarding the Canadian study since the expert testified that "he did not know the nature and extent of the studies conducted from which the statistics were gathered." *Id.* The court concluded that the gravamen of the error occurred when the trial court construed the expert's testimony in terms of probabilities. Prejudicial error occurred, the court reasoned, when during closing arguments the prosecutor tied the statistical probability of a random hair match to the probability of defendant's guilt beyond a reasonable doubt.

Although we decline to follow the federal court's reasoning on the identification issue, the reasoning is persuasive on the improper foundation issue. Several other courts have excluded statistical probability testimony on the basis of insufficient foundation for the testimony. In *State v. Sneed*, 76 N.M. 349, 414 P.2d 858 (1966), an expert witness testified that there was a 1 in 240 billion chance that someone other than the defendant had purchased a gun at a pawnshop on the date of the murder. The expert arrived

at the figure by examining telephone books for defendant's last name, examining the pawnshop register for descriptions of purchasers generally matching defendant's description, and estimating that the probability of two people picking the same post office box number from 1,000 numbers was 1 in 1,000. The expert then multiplied the factors to arrive at the final percentage. The New Mexico Supreme Court held "that mathematical odds are not admissible as evidence to identify a defendant in a criminal proceeding so long as the odds are based on estimates, the validity of which have not been demonstrated." *Id.* at 354, 414 P.2d at 861. The Arkansas Supreme Court held in *Miller v. State*, 399 S.W.2d 268, 270 (1966), that "[a]dmission of the unsubstantial, speculative testimony on probabilities was clearly erroneous." The State's expert testified that the probability that a dirt sample taken from defendant and a dirt sample taken from a ditch near the crime scene would have the same color was 1 in 10, the same texture 1 in 100, and the same density 1 in 1,000, and that there was a 1 in 1,000,000 chance that all the characteristics would match. The court reasoned that the expert witness

> had made no tests on which he could reasonably base his probabilities of one in ten on soil color, one in one hundred on soil texture, or one in one thousand on soil density (which he multiplied together to obtain his one-in-one-million figure), nor did he base his testimony on studies of such tests made by others. He admitted that his figures were predicated on "estimates" and "assumptions." In short, there is no foundation upon which to base his probabilities of one in a million.

399 S.W.2d at 270.

In the present case, Mr. Whitlock referred to the Canadian study indicating a 1 in 4,500 chance of a random match of hair from two individuals and another study involving a comparison of hair samples taken from a hundred people indicating a "very low chance" of unknown hair matching an individual at random. Mr. Whitlock testified that although he had examined 2,000 or 3,000 hairs, he had not "been involved in any controlled statistical studies." Based upon the two studies and his personal experience, Mr. Whitlock offered a conservative estimate that the likelihood of two Caucasions having indistinguishable head hair would be approximately one in a thousand. Although there may have been a sufficient foundation laid as to the statistical probabilities set

forth in the two studies, we cannot find there was a sufficient foundation laid to permit Mr. Whitlock's variation on the statistics established in controlled studies. By his own admission, Mr. Whitlock merely offered an estimate as to the probabilities of a random hair match. We find the trial court erred in admitting the statistical probability testimony offered by Mr. Whitlock. Defendant, however, has failed to demonstrate the prejudicial effect of the inadmissible testimony. *See* N.C. Gen. Stat. § 15A-1443 (1988). We have already concluded that the testimony did not constitute improper identification of defendant and defendant has presented no other basis for showing prejudice. Defendant's first assignment of error is overruled.

[2] In his second assignment of error, defendant argues that the trial court erred in permitting the prosecutor to argue that the bloody palm print found on the wall of the crime scene belonged to the victim's daughter-in-law even though the State could not prove that the print belonged to her. The State's expert testified that the print was compared to the prints of sixty-three people who had access to the crime scene. On direct examination, the expert testified that she compared the palm prints of the victim's daughter-in-law to the palm print found at the crime scene, but there was insufficient area of the prints to eliminate the daughter-in-law as the maker of the print. The expert further testified that she did not inform the police department or the district attorney's office that the prints were not sufficient to conduct an analysis. On cross-examination, however, the expert testified: "Q. And, in fact, Ms. Brown stated that she wished it was her print, didn't she? A. I don't recall. Q. And you said it's not, didn't you? A. Yes, it's not."

"[A]rguments of counsel are left largely to the control and discretion of the trial judge and . . . counsel will be granted wide latitude in the argument of hotly contested cases. Counsel is permitted to argue the facts which have been presented, as well as reasonable inferences which can be drawn therefrom." *State v. Williams*, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986) (citations omitted). The State argues that there is a reasonable inference from the evidence that the palm print may have belonged to the daughter-in-law since the daughter-in-law was seen near the victim's apartment on the day the victim was discovered and the daughter-in-law discovered the victim. Although the State's expert apparently contradicted herself, she did testify on direct and cross examinations that there was insufficient data to determine if the

print belonged to the daughter-in-law. In arguing that the print belonged to the daughter-in-law, the prosecutor did not exceed the limits of the evidence, but rather concentrated on one aspect of the expert's testimony rather than another. In the case of conflicting testimony, it is for the jury to decide which part, if any, of an expert's testimony to believe. Defendant's assignment of error is therefore overruled.

[3] In his third assignment of error, defendant argues that the trial court erred in refusing to give the following instruction:

> At most, in law, analysis of hair samples tends to identify the defendant as belonging to the class which the person whose hair sample analyzed belonged. However, it should be noted that due to the variable nature of hair, it is not possible to identify a hair as having originated from a particular individual to the exclusion of all other persons.

The trial court instructed the jury on the first sentence of the requested instruction, deleted the second, and added the following sentence: "It is for you, the jury to give such weight and credibility to this evidence as you determine is appropriate." If a defendant's requested instruction is correct in law and supported by the evidence, the trial court is not required to give the instruction exactly as requested, but must adequately convey the substance of defendant's request. *State v. Green*, 305 N.C. at 477, 290 S.E.2d at 633. Noting that the instruction given in the instant case is identical to the cautionary instruction offered in *Green*, we find no error in the jury instruction.

Affirmed.

Judge PARKER concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I agree with the majority, and for the reasons given, that it was error for the trial court to admit Mr. Whitlock's testimony that the mathematical odds of finding two people whose hairs have the same microscopic characteristics are one in 1000.

I do, however, contrary to the majority, believe that this error requires a new trial. The one in 1000 statistical testimony was significant to the State's case and there is a "reasonable possibility that . . . [this evidence] contributed to the conviction." *State v. Milby*, 302 N.C. 137, 142, 237 S.E.2d 716, 720 (1981). The two hairs found at the scene are the only physical evidence linking defendant to the crime. Although Mr. Whitlock also testified that the hair found at the scene "likely . . . originated" from the defendant, this testimony is far less persuasive than the one in 1000 testimony. Furthermore, the one in 1000 testimony was emphasized by the district attorney in her closing argument to the jury:

> And that leads us to the hair. Now, doesn't it just seem a little too coincidental to you that the one person that we have made all these stories up about . . . happens to be the same hair type as the hairs that are found at the scene? Now, that's awful coincidental if you ask me, because as Mr. Whitlock testified, it would be about a one in a thousand chance of two people at random in the population having the same hair characteristics.

In addition to the weakness of the State's evidence, there is physical evidence that someone other than the defendant could have been the assailant. There was a bloody palm print found at the scene which was positively identified as not belonging to the defendant or to any family member or police and rescue personnel. Accordingly, there exists a reasonable possibility that a different result would have been reached had the erroneous evidence not been before the jury. *State v. Gardner*, 316 N.C. 605, 613, 342 S.E.2d 872, 877 (1986). I would, therefore, grant the defendant a new trial.